Boris RAISHEVICH, Plaintiff–
Appellant,

v.

Charles FOSTER, Agent or Employee
of the NYS Police, Defendant–
Appellee.

Docket No. 99–7093.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 7, 2000.

Decided: April 18, 2001.

Roberto Rionda, Law Offices of Michael Kennedy, New York, NY, (Simone Monasebian, on the brief), for Plaintiff–Appellant.

Bruce A. Brown, Assistant Attorney General (Michael S. Belohlavek, Deputy Solicitor General, on the brief), on behalf of Eliot Spitzer, Attorney General of the State of New York, New York, NY, for Defendant–Appellee.

Before NEWMAN, CABRANES, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

Plaintiff–Appellant Boris Raishevich ("Raishevich") appeals from (1) an amended judgment of the United States District Court for the Southern District of New York (William C. Conner, *Judge*) reducing his compensatory damage award from $24,000 to $12,000 ("*Raishevich II*"), and (2) a post-trial order denying his motion for attorneys' fees, *Raishevich v. Foster,* 70 F.Supp.2d 411 (S.D.N.Y.1999) ("*Raishevich IV*").[1]

Raishevich brought suit pursuant to 42 U.S.C. § 1983 and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, seeking damages for the destruction of his photographic transparencies by Defendant–Appellee Charles Foster ("Foster"), an evidence custodian for the New York State Police. He also sought an award of attorneys' fees. After Foster conceded liability, the District Court held a bench trial, limited to the issue of damages. Raishevich now appeals from the reduction of his compensatory award and the denial of his motion for attorneys' fees.

For the reasons given below, we affirm the District Court's order reducing the damage award. We find, however, that the District Court exceeded its allowable discretion in denying Raishevich's motion for attorneys' fees solely on the basis of his rejection of a settlement figure the District Court proposed during a pre-trial settlement conference. Thus, we vacate the court's order denying Raishevich's motion for attorneys' fees and remand for further proceedings on that issue.

## BACKGROUND

For approximately fifteen years, Raishevich assembled a collection of photographic transparencies of cannabis, or marijuana, plants. *Raishevich I,* 9 F.Supp.2d at 417. In November 1993, officers of the New York State Police arrested Raishevich and seized numerous items from his home, including 347 transparencies from his cannabis collection. *See id.* Although

---

1. There were four opinions below. Following a bench trial limited to the issue of damages, the District Court awarded Raishevich $24,000 in compensatory damages. *Raishevich v. Foster,* 9 F.Supp.2d 415 (S.D.N.Y. 1998) ("*Raishevich I*"). *Raishevich II,* an unpublished opinion and order, reduced the damage award to $12,000. On January 13, 1999, the District Court, by an unpublished opinion and order, granted Raishevich's motion for an award of prejudgment interest. ("*Raishevich III*"). Finally, *Raishevich IV* addressed Raishevich's motion for attorneys' fees.

he requested that the police return his transparencies, they were destroyed by Foster, an evidence custodian for the New York State Police. On May 2, 1995, Raishevich brought suit pursuant to 42 U.S.C. § 1983 seeking compensatory damages for the destruction of these transparencies as well as an award of costs, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b).

Several pre-trial developments are of interest for our purposes. On March 6, 1996, Foster conceded liability. On May 30, 1996, Raishevich obtained new counsel, the law firm of Michael Kennedy, which has continued its representation of Raishevich through this appeal. On March 25, 1998, approximately two months before trial, the District Court conducted a settlement conference. Although each party's recollection of the conference differs somewhat, and, importantly, differs from that of the District Court, a few facts seem clear. During this conference, Assistant Attorney General Bruce A. Brown ("Brown") represented to the District Court on behalf of the defendant that "any figure over $25,000 would be beyond the settlement authority of [his] immediate supervisors and would require approval from Albany." Raishevich's counsel indicated that it would be difficult to convince her client to accept an offer less than $34,700. The District Court then "proposed a compromise at $30,000 and asked the attorneys to discuss the proposal with their clients and inform the Court as to their decision." *Raishevich IV,* 70 F.Supp.2d at 415. At oral argument before this Court, Brown confirmed that his supervisors refused to authorize a $30,000 settlement, and both counsel agreed that Foster never made an offer of $30,000. Tr. of Oral Argument at 15, 17, 18, 20, 22. Also at oral argument, Brown went beyond his representation to the District Court regarding the extent of his settlement authority and indicated that

there was never a formal offer of $25,000 because any such offer would have required the approval of New York State's Comptroller. *Id.* at 17, 21. Thus, no offer was made, nor any compromise reached.

During a two-day bench trial solely on the issue of damages, Raishevich produced little evidence of his past earnings from his now-destroyed transparencies. The District Court's evaluation of the evidence reveals that it found much of Raishevich's proof regarding his past earnings—findings not directly challenged on appeal—either unsubstantiated or unconvincing. *See Raishevich I,* 9 F.Supp.2d at 418–19. The District Court discredited Raishevich's expert witness's testimony that the value of a one-time use of a transparency was $1500, seemingly finding her testimony to be both flawed and largely irrelevant. *See id.* at 419–21. After receiving conflicting evidence regarding the value of Raishevich's transparencies, the District Court found that $200 was the proper measure of the actual value of each transparency. *See id.* at 421. The District Court then examined how many prints from his transparencies Raishevich could have sold over a thirty-year period. *See id.* Despite finding that evidence of his past earnings and productions was "scant," the District Court provided Raishevich with "the benefit of every doubt" and concluded that Raishevich's peak publication rate was two prints per year. This yielded sixty uses of his destroyed transparencies over a thirty-year period. *Id.* At $200 per use, the damages amounted to $12,000. The District Court then doubled the award of $12,000 to $24,000 because Foster's destruction of the transparencies may have hindered Raishevich's ability to prove his damages with greater specificity. *See id.* Finally, the District Court stated that the parties should bear their own costs and attorneys' fees. *See id.* at 422.

■ Foster then sought an order amending the District Court's findings of fact and judgment in order to reduce the damage award. Raishevich also moved to increase the damage award and to amend the judgment to include an award of attorneys' fees. In its December 17, 1998 order ("*Raishevich II*"), the District Court granted Foster's motion and reduced the amount of compensatory damages to $12,000, denied Raishevich's motion to increase the damages because his motion was untimely, and reserved decision on Raishevich's motion for attorneys' fees pending our decision following rehearing in *Quaratino v. Tiffany & Co.*, 129 F.3d 702 (2d Cir.1997), *vacated and superseded on rehearing*, 166 F.3d 422 (2d Cir.1999). In halving the damage award, the District Court explained that it had improperly taken the "*Bigelow* principle"[2] into account twice in its initial decision, both in determining the publication rate of a Raishevich transparency and in supplementing the resulting damage figure at the end. The District Court, however, had not explicitly discussed the "*Bigelow* principle" in its initial opinion.

Following *Raishevich II*, Raishevich moved for an order amending the judgment in order to increase the compensatory damages and to include an award of punitive damages and prejudgment interest. On January 13, 1999, the District Court granted Raishevich's motion for an award of prejudgment interest but denied his motion in all other respects ("*Raishevich III*"). In this opinion, the District

Court explained that it previously had applied the *Bigelow* principle twice—"first by substantially increasing plaintiff's estimated rate of publication ... by choosing the highest rate ever achieved (two compensated publications per year) [thereby arriving at a total damage figure of $12,000], and again by doubling the final determined market value," so as to award $24,000.

Raishevich filed a notice of appeal to this Court on January 19, 1999. On February 24, 1999 the appeal was withdrawn without prejudice to reinstatement after the District Court decided the pending issue of attorneys' fees. On November 10, 1999, the District Court denied Raishevich's motion for attorneys' fees, finding that although Raishevich was a prevailing party, special circumstances existed that rendered an award unjust. *Raishevich IV*, 70 F.Supp.2d at 414–15. The District Court concluded that such an award was unjust because (1) liability had been conceded; (2) Raishevich's expert had predicted a large sum in damages; and (3) Raishevich had rejected an offer of settlement that was greater than the amount he ultimately received in damages. *Id.*

On December 8, 1999, Raishevich filed a notice of appeal of the District Court's amended judgment of December 17, 1998, the initial judgment of August 3, 1998, and its four opinions and orders. On appeal, Raishevich contends that the District Court erred in reducing the damage award and also abused its discretion in denying his application for attorneys' fees.

2. The "*Bigelow* principle" traces its origin to the case of *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946). There, the Supreme Court established that in cases in which the defendant's wrongdoing prevented the plaintiff from demonstrating the exact measure of the damages suffered, the factfinder may make a "just and reasonable estimate" of the damage caused. *Id.* at 264, 66 S.Ct. 574. Although *Bigelow*

involved an antitrust action and was motivated in part by the difficulty in ascertaining business damages, it also relied upon the principle that "it does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted." *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566–67, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981) (internal quotation marks omitted).

## DISCUSSION

### I. Reduction of Damage Award

 Raishevich objects to the District Court's reduction of his compensatory damage award, arguing that the District Court did not include a duplicative consideration of the *Bigelow* principle, *see supra* note 2, in its initial judgment. Following a bench trial, we will not upset a district court's factual findings unless we are "left with the definite and firm conviction that a mistake has been committed." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1574 (2d Cir.1994) (internal quotation marks omitted). However, we review *de novo* a district court's conclusions of law. *See id.* at 1575.

 Although Raishevich bore the burden of persuasion with regard to his entitlement to compensatory relief, he had no obligation to offer a mathematically precise formula as to the amount of damages. *Electro–Miniatures Corp. v. Wendon Co.,* 771 F.2d 23, 27 (2d Cir.1985). If the plaintiff's inability to prove an exact amount of damages arises from actions of the defendant, a factfinder "has some latitude to 'make a just and reasonable estimate of damages based on relevant data.'" *Id.* (quoting *Bigelow v. RKO Radio Pictures, Inc.* 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946)). The factfinder, however, may not base its award on speculation or guesswork. *See Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1038 (2d Cir.1992). When "damages are at some unascertainable amount below an upper limit and when the uncertainty arises from the defendant's wrong, the upper limit will be taken as the proper amount." *Gratz v. Claughton,* 187 F.2d 46, 51–52 (2d Cir.1951). The *Bigelow* principle thus ap-

plies to situations in which the amount of damages, although not specifically ascertainable because of misconduct by the defendant, falls within a certain range. It provides the plaintiff with the benefit of a more liberalized standard of proof and prevents the defendant from "profit[ing] by his wrongdoing at the expense of his victim." *Bigelow,* 327 U.S. at 264, 66 S.Ct. 574.

 In this case, the District Court reduced its initial damage award because it concluded that it had applied the *Bigelow* principle twice. Although Raishevich takes issue with this conclusion, we find that the District Court did not err in reducing the award to correct its previous double counting. While the District Court did not discuss the *Bigelow* principle in its initial opinion, it is clear that it applied *Bigelow*'s principles in determining Raishevich's peak publication rate of two prints per year. Raishevich provided little to no evidence indicating the uniqueness of his work, his exploitation of the market demand for cannabis photography or the market value of one of his transparencies.[3] *Raishevich I,* 9 F.Supp.2d at 418–21. Moreover, the District Court found that, during a ten-year period, Raishevich published no more than ten prints. *See id.* at 421. For some of these publications, Raishevich received no compensation or the compensation he allegedly received was deemed questionable by the District Court. *See id.* at 418–19, 421. The District Court also noted that in the two-year period immediately preceding the seizure, Raishevich failed to publish at all. *See id.* at 421. Thus, it is clear from the initial opinion that the District Court's selection of a rate of two uses per year was a choice to use the upper limit and therefore to apply the

---

3. At oral argument, Raishevich's counsel confirmed that Raishevich is not challenging the District Court's factual findings regarding the uniqueness of Raishevich's work, his past earnings or his future earnings potential. Tr. of Oral Argument at 11–13.

*Bigelow* principle. That principle thus directly contributed to the $12,000 damage calculation. The District Court applied *Bigelow* again in doubling the resulting $12,000 figure to $24,000.

■ Raishevich points to no precedent requiring a District Court to factor the *Bigelow* principle in each point of its analysis; to do so would be to multiply the *Bigelow* factor exponentially. Our precedent suggests the opposite: *Bigelow* provides only that the factfinder is given some latitude in making a reasonable assessment of the damages, but it does not authorize the assessment of an additional penalty beyond permitting the plaintiff a more liberalized standard of proof. Although the *Bigelow* principle should be applied, it should not be applied twice. Here, recognizing that Raishevich's evidence was weak, the District Court gave him the benefit of the doubt, but initially did so twice. Therefore, the District Court correctly reduced its damage award in *Raishevich II* because it had previously applied *Bigelow* twice.

## II. Denial of Attorneys' Fees

■ Our review of the denial of an award of attorneys' fees is "highly deferential to the district court" and we reverse only for an abuse of discretion. *Alderman v. Pan Am World Airways,* 169 F.3d 99, 102 (2d Cir.1999) (internal quotation marks omitted). While "abuse of discretion" is "one of the most deferential standards of review[,] ... [a] district court necessarily abuses its discretion if its conclusions are based on an erroneous determination of law, or on a clearly erroneous assessment of the evidence." *Matthew Bender & Co. v. West Publ'g Co.,* 240 F.3d 116, 121 (2d Cir.2001) (internal quotation marks and citations omitted).

■ Title 42, section 1988 of the United States Code authorizes district courts to award reasonable attorneys' fees to prevailing parties in proceedings in vindication of civil rights. *See* 42 U.S.C. § 1988(b). Although a district court typically has wide discretion in choosing whether to deny attorneys' fees, we have indicated that this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust. *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir. 1982). As we explained in *Kerr,* the "function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Id.* We recognized, however, that in cases in which the merits are strong and a probable damage award is high, local counsel would be easily obtained due to the prospect of a significant contingency fee, and thus an award of attorneys' fees would not further the statutory purpose. *See id.* Accordingly, we established a two-step test for courts to apply when considering whether special circumstances make it appropriate to deny attorneys' fees. A court must make an initial determination whether "the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily retained." *Id.* To evaluate this prong, a court, analyzing the posture of the case at the time counsel is sought, must determine whether "attorneys who generally take such cases on a contingent basis would readily appreciate the value of the case and agree to pursue it." *Id.* at 878.

■ After the court determines that the plaintiff's case satisfies this first requirement for denial of fees, it then may use its discretion to deny fees if, "in light

of all of the circumstances and the size of recovery, an award of such fees might work an injustice." *Id.* We emphasized that this decision will turn on such factors as the award of punitive damages, the amount of the compensatory award, the degree and measurability of the harm to the plaintiff, and the public interest in the particular claim.[4] *See id.*

### A. Prevailing Party

▬▬▬ Before we reach the question whether the District Court correctly applied the *Kerr* test, we must address whether Raishevich is a "prevailing party."[5] 42 U.S.C. § 1988(b). To so qualify, a "civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar*, 506 U.S. at 111, 113 S.Ct. 566. A plaintiff who achieves relief as a result of a settlement may be considered a prevailing party if the relief obtained was "of the same general type" as the relief sought. *Lyte v. Sara Lee Corp.*, 950 F.2d 101, 104 (2d Cir.1991) (internal quotation marks omitted). We conclude, as the District Court did, that because Raishevich sought monetary compensation for the value of his destroyed transparencies and because Foster is legally obligated to compensate him, Raishevich qualifies as a "prevailing party." Raishevich qualifies despite the fact that he received a lesser amount than he

sought, because a "judgment for damages in any amount ... modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar*, 506 U.S. at 113, 113 S.Ct. 566 (holding that a party who wins nominal damages may be considered a prevailing party); *see also Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir.1991) (holding that a party who achieves only partial success may be considered a prevailing party). At minimum, therefore, Raishevich has established his eligibility for a fee award. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir.1998) ("A plaintiff who has 'prevail[ed]' in the litigation has established only his eligibility for, not his entitlement to, an award of fees.") (quoting *Farrar*, 506 U.S. at 114, 113 S.Ct. 566) (alteration in original). It remains to be determined whether the District Court exceeded its allowable discretion in concluding that Raishevich is not entitled to an award.

### B. Likelihood of Attracting Similar Counsel

▬▬ The District Court found that by the time Raishevich obtained his current counsel, the facts in his case were so favorable that other counsel could easily have been obtained.[6] Raishevich challenges this

---

4. *Kerr*'s "special circumstances" exception to a fee award "serves as a short-hand way of saying that, even before calculating a lodestar or wading through all the reasonableness factors, it is clear that the reasonable fee is no fee at all." *Farrar v. Hobby*, 506 U.S. 103, 118, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring).

5. Although Foster now argues on appeal that, because he did not specifically admit committing a constitutional violation, his admission of liability did not qualify Raishevich as a "prevailing party" under 42 U.S.C. § 1988(b), he previously classified Raishevich's action as one brought pursuant to 42 U.S.C. § 1983 in

his two letters to the District Court reflecting his concession of liability.

6. In its analysis, the District Court indicated that these favorable facts also helped establish the reasoning needed to justify its denial of a fee award. *See Raishevich IV*, 70 F.Supp.2d at 414–15. The District Court's opinion suggests that it considered the concession of liability, the strength of Raishevich's case, and the refusal to accept the court-proposed settlement figure all as factors permitting it to exercise its discretion to deny fees. By so doing, the District Court appears to have collapsed its analysis of the two prongs established in *Kerr*. First, under *Kerr*, a district

conclusion, arguing that the facts at the time he brought his complaint were not nearly as favorable as the District Court indicated. Raishevich's current counsel did not file this complaint but was hired *after* the defendant conceded liability. Although counsel asserted at oral argument before us that his firm was seeking fees for Raishevich's former attorney's work, this assertion is belied by the record. In his memorandum of law in support of his application for attorneys' fees and costs, Raishevich, through his counsel, explicitly forfeited the opportunity to seek fees for his prior counsel's work. Pl.'s Mem. of Law submitted to the District Court at 18.

The District Court did not exceed its allowable discretion in concluding that the merits were strong and that a high award was probable at the time Raishevich's current counsel was obtained. As the District Court noted, Foster had conceded liability before Raishevich's current counsel was hired. Thus, only the amount of damages to be awarded was at issue. Moreover, at the time current counsel was obtained, the only existing expert witness report evaluating the value of Raishevich's transparencies was that of Raishevich's expert. This report stated that Raishevich had "suffered damages of no less than $261,000 and as much as $522,000." At that time, no competing expert report had been undertaken. Thus, although Raishevich's counsel now argues that the amount of damages was still "hotly contested" and, therefore, the concession of liability alone could not satisfy *Kerr*'s first prong, the record does not support his argument.

Hence, the District Court did not exceed its allowable discretion here because "attorneys who generally take such cases on a contingent basis would [have] readily appreciate[d] the value of the case and agree[d] to pursue it." *Kerr*, 692 F.2d at 878.[7]

### C. Discretion to Deny Fee Award

 Having found *Kerr*'s first prong satisfied, the District Court moved to *Kerr*'s second question—whether an award of fees would be unjust. *See Kerr*, 692 F.2d at 877 ("The district court's discretion to deny fees begins ... only after an initial determination [that the first prong is satisfied].". The District Court found that such injustice would occur because Raishevich refused to accept a settlement offer of an amount significantly greater than that which he ultimately recovered. We find that the District Court exceeded its allowable discretion in denying an award of attorneys' fees on the basis of Raishevich's rejection of the court-proposed settlement "offer."

 In this case, both parties agree that the defendant never made a formal (or even an informal) settlement offer of either $25,000 or $30,000. Rather, the $25,000 figure was contingent on approval by state authorities and the $30,000 figure was the court's proposal alone. Thereafter, Foster did not accept the court's figure, nor propose a new amount. Yet, despite the fact that no settlement offer existed, the District Court penalized Raishevich for not accepting the court's proposed figure. The District Court of-

---

court must determine whether the facts at the time counsel was hired reveal that the merits of the case are strong and a probable damage award is high. 692 F.2d at 877–78. Then, and only then, may a district court exercise its discretion to deny fees because the circumstances of the case indicate that an award would be unjust. *Id.*

7. Indeed, Raishevich's current counsel agreed to take this case on a contingent basis. Of course, "determination of the ease with which counsel can be retained to handle cases similar to the plaintiff's [ ] is not resolved simply by the fact that in the actual case counsel was retained." *Kerr*, 692 F.2d at 878.

fered no other reason for finding that the circumstances of this case were so "special" as to indicate that an award of attorneys' fees would be "unjust." *See Raishevich IV,* 70 F.Supp.2d at 414–15. In addition, it is far from settled that a court may use the refusal to accept an informal oral settlement proposal, as opposed to a formal written offer made pursuant to FED.R.CIV.P. 68, as a basis to deny fees. *See, e.g., Ortiz v. Regan,* 980 F.2d 138, 140–41 (2d Cir.1992) (reversing denial of attorneys' fees for work done after an informal request to negotiate a settlement); *Grosvenor v. Brienen,* 801 F.2d 944, 948 (7th Cir.1986) (holding that oral settlement offer made at a settlement conference and refused · by the plaintiff did not satisfy the requirements of Rule 68 and could not cut off the plaintiff's post-offer attorneys' fees). We have indicated that "[a]bsent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award.'" *Ortiz,* 980 F.2d at 141 (quoting *Cowan v. Prudential Ins. Co. of Am.,* 728 F.Supp. 87, 92 (D.Conn.1990) (Winter, J., sitting by designation), *rev'd on other grounds,* 935 F.2d 522 (2d Cir.1991)). No finding of bad faith, however, was made below. Thus, by equating its proposal that was not accepted by either party with an actual settlement offer, the District Court relied on "a clearly erroneous assessment of the evidence." *Kerin v. United States Postal Serv.,* 218 F.3d 185, 188–89 (2d Cir.2000). Moreover, by relying on Raishevich's refusal of the court's proposal, the District Court made an "erroneous determination of law." *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 78 (2d Cir. 2000). Accordingly, we conclude that the District Court exceeded its allowable discretion in relying upon this basis to deny fees.

We also recognize that the District Court's reliance on its own settlement pro-posal in denying a fee award is a "problem," *Ortiz,* 980 F.2d at 140. We have cautioned that a

> district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded ... [because] "[a] rule giving trial judges discretion to deny such fees where the refusal of an offer is shown after the fact to have been unwise might well lead to very uneven results and even misuse in cases in which judges become involved in settlement negotiations."

*Ortiz,* 980 F.2d at 140–41 (quoting *Cowan,* 728 F.Supp. at 92). Here, the District Judge conducted a settlement conference and proposed a settlement figure in a case later tried to the bench. Both parties rejected his proposed figure, but one party bore the brunt of that rejection by the court's subsequent denial of its motion for attorneys' fees.

Although the decision to deny or award attorneys' fees is "uniquely within the province of a district court, we nevertheless need to ensure that any such decision is made with restraint and discretion." *Salovaara v. Eckert,* 222 F.3d 19, 27 (2d Cir.2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir.1999)). We conclude that, in this case, the District Court exceeded its allowable discretion in denying attorneys' fees to the prevailing party on the basis of that party's rejection of the court's settlement proposal, which was also rejected by his adversary. It is quite clear from the record that the District Court concluded that Raishevich's refusal to settle at its proposed amount was a "special circumstance" that, by itself, rendered an award of fees unjust. Because the District Court did not analyze the other factors suggested in *Kerr,* 692 F.2d at 878, and because the decision to award or deny fees is best

determined by the district judge "who is most familiar with all facets of the case," *id.*, a remand is appropriate. *See, e.g., Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 126 (2d Cir.2001) (remanding where district court relied on wrong legal standard and did not specifically identify other facts that could have justified a fee award); *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 521 (2d Cir. 1993) ("[T]his Court will not speculate as to whether the award is appropriate under any other theory that has not been stated by the district court....."). On remand, the District Court should reconsider Raishevich's application for attorneys' fees.

## CONCLUSION

For the foregoing reasons, we affirm the District Court's amended judgment filed on December 17, 1998 reducing the compensatory damage award. However, we vacate the District Court's order of November 10, 1999 denying Raishevich's application for attorneys' fees and remand for the District Court to reconsider his application. Each party shall bear its own costs on this appeal.