**FAULKNER'S AUTO BODY CENTER, INC., Plaintiff–Appellee/Cross–Appellant,**

v.

**COVINGTON PIKE TOYOTA, INC., Defendant–Appellant/Cross–Appellee.**

Nos. 00–6786, 01–5032.

United States Court of Appeals, Sixth Circuit.

Aug. 12, 2002.

Before KRUPANSKY and COLE, Circuit Judges, and DUGGAN,* District Judge.

## OPINION

COLE, Circuit Judge.

Covington Pike Toyota, Inc. ("CP–Toyota") appeals an anti-trust judgment in favor of Faulkner's Auto Body Center ("Faulkner's Auto") as well as the partial award of attorney fees and litigation expenses to Faulkner's Auto. Similarly discontented with the judgment, Faulkner's Auto cross-appeals the calculation of damages, attorney fees, and expenses. For the reasons that follow, we **AFFIRM** the anti-trust judgment, the calculation of damages, part of the attorney fees award, and the award of litigation expenses, **REVERSE** a portion of the attorney fees award, and **REMAND** the case for recalculation of attorney fees.

## I.

### A. The Business Relationship Between Faulkner's Auto and CP–Toyota

In 1989, Gary Faulkner purchased Faulkner's Auto for $100,000 and grew the business to become one of the largest auto body shops in Memphis, Tennessee. As an auto body shop, Faulkner's Auto relied on two critical sources of profit: the sale of auto parts needed for auto body work and the labor costs of auto body repair work. The sale of auto parts was profitable be-cause when a car dealership referred business to an auto body shop, that shop would purchase auto parts from the car dealership at typically a 20% discount, but then charge the customer full price. The other source of profit, the cost of labor, was usually paid by insurance companies, who set prevailing labor rates for reimbursing auto body shops. In Memphis, State Farm Insurance managed over 70% of the auto body claims and for that reason, it set the prevailing labor rate at $22 an hour.

CP–Toyota was instrumental in Faulkner's Auto's success. Faulkner's Auto received the majority of its business from CP–Toyota and CP–Toyota referred most of its auto body work to Faulkner's Auto. Contributing to their healthy business relationship was Faulkner's Auto's practice of purchasing auto parts from CP–Toyota at only a 15% discount. This important relationship between Faulkner's Auto and CP–Toyota developed largely due to the initiative of Sharon Shea, one of Gary Faulkner's assistants.

### B. The Group Boycott

The seeds of this conflict were planted in late 1990, when several Memphis-area auto body shops decided to report a labor rate of $25 an hour in an effort to induce State Farm into raising the prevailing labor rate. Because Faulkner's Auto had a reputation as a price-cutter and had previously refused to report higher labor rates to State Farm, the other body shops feared that Faulkner's Auto would refuse to participate in their effort to increase the labor rate. To pressure Faulkner's Auto into reporting higher labor rates to State Farm, the other auto body shops threatened the relationship between Faulkner's Auto and CP–Toyota.

* The Honorable Patrick J. Duggan, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Defendant Bobby DePriest, an owner of another Memphis-area body shop, led the effort against Faulkner's Auto. After coordinating with other auto body dealers, DePriest called CP–Toyota on Friday, January 4, 1991 and relayed that he would not do business with CP–Toyota if it continued to do business with Faulkner's Auto. DePriest also mentioned that he might not be the only body dealer in town that felt that way. Prior to DePriest's call, CP–Toyota's parts manager, Mike Pickens, had spoken with three other auto body dealers, who informed him of the boycott aimed at Faulkner's Auto and the reasons behind it. As a result of the group boycott threat, CP–Toyota decided to cease referring business to Faulkner's Auto. In a January 7, 1991 phone call, Pickens explained to Gary Faulkner that CP–Toyota had made a decision "instead of losing every body shop in town." Pickens elaborated that when Faulkner's Auto and the other body shops "work out a situation to where that we can deal all together then everything's fine."

DePriest and the other auto body shops claim to have had a change of heart after the weekend. On Monday, January 7, several auto body shops contacted CP–Toyota to call off the threatened boycott. Moreover, DePriest apologized to Gary Faulkner at a trade convention on January 9 and they shook hands.

Despite those efforts at reconciliation, Faulkner's Auto's business suffered. Although CP–Toyota began referring business to Faulkner's Auto again, it never referred as much business to Faulkner's Auto as before. The records from Faulkner's Auto indicate that it worked on 444 Toyotas in 1990; 184 in 1991; 18 in 1992; and none from 1993–96. Also contributing to this decline in referrals was Sharon Shea's departure from Faulkner's Auto in May or June of 1992 to start her own shop, which received referrals from CP–Toyota.

Ultimately, due to CP–Toyota's reduced referrals, Gary Faulkner sold Faulkner's Auto in July 1996 for $100,000.

## C. The Suit in District Court, Case No. 92–2565

Based on those events, Faulkner's Auto filed a six-count complaint against CP–Toyota and eighteen Memphis-area auto body shops for the following violations: (1) conspiracy to fix prices in violation of Sherman Anti–Trust Act § 1, 15 U.S.C. § 1; (2) agreement to group boycott in violation of Sherman Anti–Trust Act § 1; (3) conspiracy to monopolize in violation of Sherman Anti–Trust Act § 2, 15 U.S.C. § 2; (4) a pattern of corrupt practices based on mail fraud and wire fraud in violation of 18 U.S.C. §§ 1961 and 1962; (5) interference with contract in violation of Tennessee Code § 47–50–109; and (6) unlawful restraint of trade in violation of Tennessee Code § 47–25–101. The district court entered summary judgment in defendants' favor on Counts 1, 3, and 6. After a bench trial on the issue of liability, the district court granted judgment to defendants on Counts 4 and 5, but found two defendants, CP–Toyota and Bobby DePriest, liable on Count 2 for conspiracy to unreasonably restrain competition through a group boycott.

The damages phase of the bench trial proceeded in front of a magistrate judge, who assessed damages as a result of the group boycott. Due to Faulkner's Auto's vague and largely inconclusive records as well as independent events such as Shea's departure, the magistrate judge did not award lost profits or future profit damages. The magistrate judge did compensate Faulkner's Auto for loss of a going concern by using a revenue ratio approach in which the ratio of the 1996 gross revenue to the 1989 gross revenue was multiplied by the 1989 purchase price

of Faulkner's Auto ($100,000). That technique resulted in a going concern value of $262,943.40, which, when trebled and then reduced by the amounts of settlements with other defendants ($65,000) and by the proceeds from the sale of Faulkner's Auto in 1996 ($100,000), resulted in an anti-trust damage award of $623,830.20. In addition to those damages, the magistrate judge also awarded attorney fees and litigation expenses to attorneys for Faulkner's Auto.

An appeal and cross-appeal followed the bench trial judgments. On appeal, CP–Toyota argued that there was not sufficient evidence for the district court's conclusion that CP–Toyota entered into a group-boycott conspiracy; that the district court impermissibly considered damages issues at the liability phase of the trial; and that the magistrate judge incorrectly calculated damages. Faulkner's Auto cross-appealed, arguing that the magistrate judge erred in calculating damages by omitting past damages; failing to consider future damages; and improperly discounting the attorney fees and expenses award. Those issues are now before this Court.

## II.

### A. The Sufficiency of Evidence for CP–Toyota's Liability for Participation in a Group Boycott Conspiracy

■ CP–Toyota argues that there was not sufficient evidence to support its involvement in an antitrust conspiracy for two reasons. First, it contends that when DePriest and the other auto body dealers called off the boycott on January 7, 1991, the conspiracy ended before it took effect. Second, CP–Toyota argues that it had independent reasons for terminating its business relationship with Faulkner's

Auto – Faulkner's Auto was not current on its bills. The district court did not interpret the facts that way and, after reviewing the district court's decision for clear error,[1] we find none. For that reason, we affirm the district court's finding that a conspiracy existed and we reject CP–Toyota's challenges to the sufficiency of the evidence.

### B. The District Court's Obedience to Its Bifurcation Order

■ CP–Toyota next argues that the district court violated its own bifurcation order, which separated the liability and damages issues. Specifically, CP–Toyota contends that the district court erred in considering damages issues at the liability bench trial. In support of its argument, CP–Toyota identifies four references in the district court's opinion to Faulkner's Auto being put out of business. But, the Supreme Court has made clear that for an anti-trust plaintiff to recover, it must sustain a loss that "stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (emphasis in original). In the absence of such a loss, Faulkner's Auto would have no civil anti-trust claim against CP–Toyota. Here, the district court considered only the existence of damages and did not comment on the measurement or calculation of damages. For that reason, the district court's statements regarding the existence of damages do not violate its bifurcation order. Consequently, we reject CP–Toyota's challenge to the administration of the bifurcation order.

### C. The Calculation of Damages

Both parties challenge the magistrate judge's calculation of damages. CP–Toyo-

---

1. *See Burzynski v. Cohen,* 264 F.3d 611, 616 (6th Cir.2001); *Hamilton v. Carell,* 243 F.3d 992, 997 (6th Cir.2001); *see also* Fed.R.Civ.P. 52(a).

ta argues that the magistrate judge erred in his calculation of damages for three reasons: (1) the magistrate judge had only speculative, remote, and uncertain evidence on loss of going concern damages; (2) the magistrate judge misapplied data regarding the value of Faulkner's Auto as a going concern; and (3) the magistrate judge should not have calculated damages based solely on the testimony of Gary Faulkner. Faulkner's Auto cross-appeals the magistrate judge's decision not to award lost profits or future profits.

As a factual finding, we review the magistrate judge's damages award for clear error. *See Burzynski,* 264 F.3d at 616; *Hamilton,* 243 F.3d at 997; *see also* Fed. R.Civ.P. 52(a). Moreover, we note that it is well-established that the calculation of anti-trust damages is not an exact science. *See Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 266, 66 S.Ct. 574, 90 L.Ed. 652 (1946). Applying those standards of review to the magistrate judge's analysis, we conclude that, although, if conducting the damages hearing *de novo,* we might evaluate damages through different methods, on balance, the amount of the damages award was not clearly erroneous. For that reason, we consider damages no further and affirm the amount of the award.

### D. The Attorney Fee Award to Faulkner's Auto

In its cross-appeal, Faulkner's Auto challenges the calculation of the attorney fee award for four reasons: (1) the magistrate judge erred in discounting the hourly rate for attorney Coleman from $250 to $175 and an associate's hourly rate from $150 to $120; (2) the magistrate judge disallowed 50% of the fees for certain attorneys (366.25 of Coleman's hours and 748 of two associates' hours) because Coleman's wife owned half of the stock in Faulkner's Auto; (3) the magistrate judge erred in reducing the attorney fee award

for the fees incurred in reaching settlements with other defendants; and (4) the magistrate judge erred by assessing an overall reduction of 40% of the fees and expenses due to Faulkner's Auto's limited success. CP–Toyota barely responds to these arguments, doing little more than citing the Fifth Circuit's standards for awarding attorney fees, *see Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

In reviewing a 15 U.S.C. § 15 award of attorney fees in an anti-trust case, an appellate court affords the district court significant discretion. *See Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 581 (5th Cir.1980); *see also ES Dev., Inc. v. RWM Enters., Inc.,* 939 F.2d 547, 559 (8th Cir.1991). A district court necessarily abuses that discretion, however, when its factual assessments are clearly erroneous or where it makes an erroneous determination of law. *See Raishevich v. Foster,* 247 F.3d 337, 344 (2d Cir.2001) (quoting *Matthew Bender & Co., Inc. v. West Publ'g Co.,* 240 F.3d 116, 121 (2d Cir.2001)); *see also ES Dev., Inc.,* 939 F.2d at 559.

#### 1. The reduction of hourly rates

We review the reduction in hourly rate under an abuse of discretion standard. The magistrate judge determined that although he has been in practice since 1973, Coleman has been listed as counsel in only two federal cases (including this one) and he has no particularized anti-trust knowledge. Therefore, the magistrate judge reimbursed him at $175 an hour and his associate at $120 an hour. There was no abuse of discretion in those reductions.

#### 2. The reduction of the total award by 50% based on Coleman's wife owning 50% of the Faulkner's Auto stock

In addition to reducing the hourly rate, the magistrate judge reduced the at-

torney fee award to Coleman by 50%. The magistrate judge reasoned that because Tennessee was a tenancy by the entirety state and because Coleman's wife owned 50% of Faulkner's Auto, Coleman also owned 50% of Faulkner's Auto. Based on that reasoning, the magistrate judge concluded that 50% of Coleman's representation of Faulkner's Auto was *pro se* and, for that reason, un-reimbursable. We review *de novo* the legal determination of whether ownership of 50% of a Tennessee corporation triggers *pro se* representation. Corporations in Tennessee are separate legal entities. *Old Hickory Eng'g & Mach. Co., Inc. v. Henry*, 937 S.W.2d 782, 785 (Tenn.1996) (noting that "a corporation is an entity separate and distinct from its officers and shareholders"). A 50% shareholder's legal representation of a corporation, although likely to trigger ethical concerns, is not a *pro se* representation. Therefore, the magistrate judge's 50% fee reduction was in error and should be reversed. We reverse that award and remand.

### 3. The discount of the attorney time incurred in reaching settlements with other defendants

■ The magistrate judge reduced Coleman's attorney fee award by $2581.25 (14.7 at $175 per hour) for his time spent settling with other defendants. The magistrate judge also deducted the fruit of that settlement ($65,000) from the treble damage award. Faulkner's Auto argued that it is unfair to disallow attorney fees recovery and to reduce the damage award. As stated above, we evaluate Faulkner's Auto's challenge to the magistrate judge's attorney fees award under an abuse of discretion standard. It is reasonable not to make CP–Toyota pay for the attorney fees incurred as part of the settlement negotiations with other defendants; therefore, the magistrate judge did not abuse his discretion in disallowing recovery of those attorney fees. At the same time, it is not an abuse of discretion to discount the settlement amounts from the total treble damages award because those settlements constitute amounts by which the injury to Faulkner's Auto was reduced. Therefore, we affirm the magistrate judge's decision on this point.

### 4. The 40% reduction in attorney fees and expenses for limited success

■ We review Faulkner's Auto's challenge to the magistrate judge's reduction of the attorney fees and expense award by 40% for an abuse of discretion. Here, Faulkner's Auto filed six counts against nineteen defendants. It recovered on one count against two defendants and a few other defendants settled out of the case. Faulkner's Auto won the case, but it lost several claims against several defendants. Based on success against two of nineteen defendants, a 40% reduction in attorney fees is not an abuse of discretion. With regard to expenses, Faulkner's Auto calls our attention a Second Circuit decision, where, although attorney fees were reduced, expenses were not. *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416–17 (2d Cir.1989). While that case provides no explanation for the distinction, its approach may well be superior, especially if Faulkner's Auto would have incurred the same expenses regardless of which counts and which defendants it prevailed upon. Nevertheless, we do not believe that the magistrate judge abused his discretion in reducing the expense award by 40%.

### III.

For the above reasons, we **AFFIRM** the district court's anti-trust judgment, **REVERSE** a portion of the magistrate judge's attorney fees award, and **RE-**

MAND the case for proceedings consistent with this opinion.