Rasean J. TATE, et al., Plaintiffs,

v.

LEVY RESTAURANT HOLDINGS, LLC and Rocketball Ltd., Defendants.

14-CV-2056

United States District Court, E.D. New York.

Signed December 15, 2015

Filed December 16, 2015

Marjorie Mesidor, Nicole Ann Welch, Phillips & Associates, PLLC, New York, NY, for Plaintiffs.

Adam T. Simons, McGuire Woods LLP, Baltimore, MD, Michael J. Dimattia, McGuire Woods LLP, New York, NY, for Defendants.

## ORDER

Jack B. Weinstein, Senior United States District Judge

Pursuant to Federal Rule of Civil Procedure 72(b)(2) the parties had fourteen days to file written objections to the report and recommendation of the magistrate judge dated November 16, 2015. *See also* ECF No. 101 ("Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report"). No objection was filed.

The report and recommendation is confirmed. Defendant Rocketball Ltd.'s motion for an award of attorneys' fees (ECF No. 87) is denied.

SO ORDERED.

## REPORT AND RECOMMENDATION

VIKTOR V. POHORELSKY, United States Magistrate Judge

The defendant Rocketball Ltd. has moved for an award of attorneys' fees following the entry of summary judgment in their favor in this employment discrimination action, and Judge Weinstein has referred the motion to me for a report and recommendation pursuant to title 18, United States Code, section 636(b)(1)(B). The motion requires the court to consider the circumstances when such an award may be made under New York state law to a prevailing defendant in an employment discrimination case. For the reasons that follow, I conclude that New York law follows federal law on the matter, and that under New York law the circumstances

here do not warrant an award of attorneys' fees to Rocketball.

## BACKGROUND

This case arises from alleged discriminatory treatment suffered by the plaintiff Rasean Tate because of his perceived sexual orientation, and alleged retaliation against the plaintiff Iusaset Bakr, who was Tate's supervisor, when she complained about the disparate treatment she believed Tate was suffering. Both plaintiffs were employed by the defendant Levy Restaurant Holdings, LLC, a catering company that provides catering services at various sports arenas including the Barclay Center in Brooklyn, New York, and the Toyota Center in Houston Texas.

According to the amended complaint, the discrimination suffered by Tate began as a result of incidents that occurred in the locker room assigned to the Houston Rockets when they visited the Barclay Center for a basketball game with the Brooklyn Nets. Levy was hired to provide catering services to the locker room, and Tate was among the employees of Levy who went to the locker room for that purpose. After arriving, he began to be taunted by some of the players on the Houston Rockets team as a "faggot," and some demanded that he be removed from the locker room. At the behest of a member of the staff of the Brooklyn Nets who witnessed the incident, Tate left the locker room, embarrassed and upset. He thereafter reported the incident to his manager at Levy and, in a series of meetings involving representatives of Levy, the Brooklyn Nets and the plaintiff's union, Tate was assured that appropriate steps were being taken to rectify matters. Tate was also told that league commissioners and the Houston Rockets had been advised of the incident.

Notwithstanding the assurances he received, however, Tate alleges that his work assignments from that time forward were curtailed. He was denied opportunities to work overtime and was not assigned to work in desirable sections of the Barclay Center where he had routinely been assigned in the past. Rather, the assignments were now going to heterosexual employees and employees who had not complained of discrimination. When the plaintiff Bakr became his direct supervisor, she noted the disparate treatment Tate was receiving in a variety of instances. However, when she brought that to the attention of her supervisors at Levy and complained of the discrimination Tate was receiving, she too found her work assignments being reduced and she was ultimately discharged for insubordination. The plaintiffs alleged that the discriminatory treatment Tate was suffering was the result of his complaint about the discriminatory conduct of the Houston Rockets team, which is owned by the defendant Rocketball, and was being undertaken by Levy to further the interests of the Houston Rockets.

Promptly after the filing of the initial complaint, the defendant Rocketball made a motion to dismiss for failure to state a claim, relying chiefly on the argument that, as Rocketball was not the plaintiff's employer, the plaintiff could not assert a claim against it under the New York City Human Rights Law (the "NYCHRL"). Before any responsive papers were filed by the plaintiff, however, Judge Weinstein ordered that the motion be converted to one for summary judgment and directed that the parties engage in expedited discovery limited to the question whether there existed an employment relationship between the plaintiff and Rocketball. That ruling was followed by the filing of an amended complaint which added Iusaset Bakr as a plaintiff and allegations that

Rocketball and Levy were joint employers with respect to the plaintiff Tate.

Following a brief period of discovery, Judge Weinstein granted Rocketball's motion dismissing all claims against Rocketball, but stayed dismissal for a period of 60 days to permit the plaintiff to conduct further discovery on the employment issue. Memorandum and Order, Sept. 18, 2014 [Doc. No. 47]. Following the 60-day discovery period, which was extended by an additional 60 days, the plaintiff moved for leave to file a motion for reconsideration of the order granting Rocketball's motion to dismiss. When that motion was denied, and the dismissal of all claims against Rocketball therefore became final, Rocketball filed the instant motion for attorneys' fees.

## DISCUSSION

Rocketball asserts two alternative bases in New York law for the award of attorneys' fees they seek here.[1] First, under the New York City Human Rights Law, which is the statute that was the basis for the plaintiff's claims here, "the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees." N.Y.C. Admin. Code § 8–502. Second, Rocketball argues that the court may award attorneys' fees because of the plaintiff's vexatious and bad-faith conduct. *See Asesores y Consejeros Aconsec CIA, S.A. v. Global Emerging Markets N. Am., Inc.*, 881 F.Supp.2d 554, 555 (S.D.N.Y.2012).

### A. Fees Under the NYCHRL

■ The standards for awarding attorneys' fees under the NYCHRL mirror those that govern such awards in federal civil rights cases. *See McGrath v. Toys*

"R" Us, Inc., 3 N.Y.3d 421, 429, 821 N.E.2d 519, 522, 788 N.Y.S.2d 281 (2004); *accord, e.g., Hugee v. Kimso Apartments, LLC*, 852 F.Supp.2d 281, 297 (E.D.N.Y. 2012). Thus, although an award of fees is presumed when the prevailing party is the plaintiff, *e.g., Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir.2001), "fees should be awarded to prevailing defendants only when the plaintiff's 'claim was frivolous, unreasonable, or groundless, or … the plaintiff continued to litigate after it clearly became so.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). Thus, a court may not assess attorneys' fees against a plaintiff simply because the plaintiff does not prevail, as that would undercut the statutory purpose of promoting vigorous enforcement of employment discrimination laws. *Christiansburg Garment*, 434 U.S. at 422, 98 S.Ct. 694. Consequently, although a prevailing defendant need not show that the plaintiff acted in bad faith, *Fleming v. Maxmara U.S., Inc.*, 2010 WL 1629705, at *7 2010 U.S. Dist. LEXIS 39108, at *22 (E.D.N.Y. Apr. 20, 2010), the burden of establishing that the plaintiff's claims were "frivolous, unreasonable, or groundless" is a heavy one, and "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees," *id.* at *8, 2010 U.S. Dist. LEXIS 39108, at *25 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 178 (2d Cir.2006).

■ Upon examination of the plaintiff Tate's claims in the amended complaint, the court concludes that they were not frivolous, unreasonable, or groundless.

---

1. As this case proceeded under the court's diversity jurisdiction, state law controls the because the Second Circuit has held that the issue of attorneys' fees is substantive. *Asesores y Consejeros Aconsec CIA, S.A. v. Global*

*Emerging Markets N. Am., Inc.*, 881 F.Supp.2d 554, 555 (S.D.N.Y.2012) (citing *Lewis v. S.L. & E., Inc.*, 629 F.2d 764, 773 n. 21 (2d Cir. 1980)).

The amended complaint contains a detailed exposition of facts and circumstances that would lead to the conclusion that Rocketball was in some way responsible for changes in the plaintiff's conditions of employment. The recitation also provides a basis for concluding that those changes were related to the plaintiff's perceived sexual orientation, which would constitute discrimination in violation of the NYCHRL. Those detailed factual allegations were sufficient to convince Judge Weinstein that the plaintiff should be permitted to explore the relationship between Rocketball and the plaintiff's direct employer, Levy, to determine whether Rocketball had sufficient control and management over the plaintiff's employment so as to be considered a joint employer with Levy. And indeed, the discovery that ensued did unearth an indirect relationship between Rocketball and Levy, as Levy had a contract with an entity closely affiliated with Rocketball under which Levy provided catering services at the arena in Houston which serves as the home for the Rockets. Moreover, Rocketball itself was a signatory on the contract. Although the plaintiff was not ultimately able to convince the court that the relationship between Rocketball and Levy rose to the level necessary for a finding that Rocketball was a joint employer of the plaintiff, the facts are more than sufficient to convince the court that the plaintiff's claims were not clearly without merit. Thus, the defendant has not satisfied the heavy burden needed to warrant an award of attorneys' fees under the NYCHRL.

### B. *Fees for Vexatious and Bad–Faith Conduct*

Under New York law, "the court, in its discretion may impose financial sanctions upon any party ... who engages in frivolous conduct." *Asesores y Consejeros Aconsec CIA, S.A. v. Global Emerging Markets N. Am., Inc.*, 881 F.Supp.2d 554, 555 (S.D.N.Y.2012) (citing N.Y. Comp. Codes R. & Regs. tit. 22, § 130–1.1(a)). Conduct may be deemed frivolous if "(1) it is completely without merit in law and cannot serve as a reasonable argument to extend or modify existing law; (2) it is undertaken to delay or prolong litigation or harass or maliciously injure another; or (3) it asserts material factual statements that are false." *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 22, § 130–1.1(c). Rocketball argues that the plaintiff engaged in three kinds of purported misconduct that satisfy the above definition of frivolousness: first, by making allegations that Rocketball was a joint employer of the plaintiff; second, by making irrelevant discovery requests and motions to compel with respect to those requests; and third, by making materially false statements during the litigation.

The court's discussion above concluding that the plaintiff's joint employer claims were not frivolous disposes of the first of these items of purported misconduct. Turning to the discovery requests and motions to compel made by the plaintiff, I have reviewed the requests and the proceedings that dealt with the disputes concerning those requests. The requests served on Rocketball were overbroad to some extent, but they did not seek information that was entirely irrelevant to the issues at hand and none of the requests sought information for the purpose of embarrassing the defendant or any other vexatious reason. The plaintiff filed three applications for judicial intervention concerning his discovery requests. The first was dismissed as moot. Doc. No. 39. The second was granted in part and denied in substantial part. Doc. No. 55. As neither motion resulted in findings wholly in favor of the defendant, they cannot be deemed to have been made in bad faith. As for the

third motion, although it was denied in its entirety, Doc. No. 81, the plaintiff's motion raised a legitimate concern about Rocketball's failure to produce a document that plainly fell within one of the plaintiff's proper requests for discovery. I ultimately determined that the failure to produce the document was inadvertent, but that does not render the motion frivolous or in bad faith.

Rocketball seeks to find vexatiousness and bad faith in the fact that the plaintiff pursued discovery during the "grace period" afforded by Judge Weinstein's order granting their motion for summary judgment, and then sought an extension of that discovery period. Since both the initial discovery period and the extension of that period were granted by court order, the plaintiff can hardly be faulted for that course of events. Rocketball correctly notes that the plaintiff served an inappropriate notice of deposition which required the defendant to make a motion to quash on which Rocketball prevailed because the plaintiff sought to hold the deposition on only three days' notice. The notice of deposition was not otherwise inappropriate, however, and the deposition was rescheduled at a more reasonable time. That one instance of ill-advised conduct by the plaintiff is not sufficient to sustain a finding that the plaintiff has engaged in conduct so vexatious and in such bad faith that would support the award of attorneys' fees sought by the defendant.

Finally, Rocketball contends that the plaintiff made false statements of fact about Rocketball's relationship with the Toyota Center and with CCS & E, the entity that operates the Toyota Center. An examination of the filings in which the supposed false statements appear, Doc. Nos. 65 and 66, and the transcripts of proceedings in which supposedly false assertions were made, Doc. Nos. 83 and 91,

reveals that the false statements are simply conclusions that the plaintiff asked the court to draw based on facts that had been obtained in discovery. Although the court ultimately rejected the plaintiff's theories that CCS & E was a shell company operated by Rocketball, and through which Rocketball actually operated the Toyota Center, the facts on which the plaintiff relied in making his arguments are not disputed. Again, the fact that the plaintiff advanced arguments about Rocketball's relationship with CCS & E and the Toyota Center that were rejected by the court does not make the plaintiff guilty of making false statements because he advanced those arguments.

I therefore conclude that an award of attorneys' fees for vexatious or bad-faith conduct is not warranted.

CONCLUSION

For the foregoing reasons, I recommend that the defendant Rocketball's motion for an award of attorneys' fees should be denied.

\* \* \* \* \* \* \* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health*

*and Human Serv.*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).