Rachel M. BAIRD and Bonnie
Porter, Plaintiffs,

v.

BOIES, SCHILLER & FLEXNER LLP,
David Boies, Robert Silver and Philip
Korologos, Defendants.

No. 02 Civ. 345(DC).

United States District Court,
S.D. New York.

Aug. 28, 2002.

Brune & Richard LLP by Hillary Richard, Laurie Edelstein, New York City, for Plaintiffs.

Epstein, Becker & Green, P.C. by Ronald M. Green, New York City, for Boies, Schiller & Flexner LLP.

David Boies, Armonk, NY, Defendant pro se.

Boies & McInnis LLP by Mary Boies, Bedford, New York, for Defendants Silver and Korologos.

## OPINION

CHIN, District Judge.

In this employment discrimination case, plaintiffs Rachel M. Baird and Bonnie Porter alleged that their former employer, Boies, Schiller & Flexner LLP (the "Firm"), discriminated against them because of their gender. Plaintiffs alleged that they were relegated to the Firm's "non-partnership track"—which they have described as a "female ghetto"—while the more prestigious, higher-paying "partnership track" was reserved almost exclusively for men.

The case was launched with great fanfare, and received extensive media coverage when it was filed in January 2002. Just four months later, however, the case concluded with a whimper. The Firm made offers of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure to each plaintiff in the amount of $37,500, plus reasonable attorneys' fees and costs to be set by the Court. As a consequence,

plaintiffs were faced with the prospect of having to pay defendants' litigation costs if they rejected the offers and thereafter failed to obtain a more favorable judgment. Although plaintiffs had initially calculated their combined damages as approximating $1.25 million, plaintiffs accepted the offers of judgment.

This application for attorneys' fees and costs followed. The application is granted, for plaintiffs are "prevailing parties" entitled to reasonable fees and costs. The requested fees must be substantially reduced, however, because plaintiffs achieved only limited success. As discussed more fully below, although plaintiffs seek total fees of $191,048.33, I award only $54,723.93. Costs are allowed in the amount of $7,506.23.

## BACKGROUND

The facts are drawn from the pleadings, the extensive evidentiary materials submitted to the Court, and the prior proceedings in this case. In addition, the Court conducted a hearing on June 12, 2002; the parties presented argument but declined the opportunity to present further evidence. The following constitute my findings of fact.[1]

### A. Plaintiffs

Baird graduated from Yale Law School in 1992. (Compl. ¶ 20). After graduation, she worked as an Assistant Attorney General in the Attorney General's Office for the State of Connecticut for two years. (Id.). Thereafter, Baird worked for five years as an Assistant State's Attorney in the Connecticut Division of Criminal Justice. (Id.).

Porter graduated from Boston College School of Law in 1998 magna cum laude. (Id. ¶ 24). After graduation, she clerked

---

1. In some instances, my findings consist simply of restating the allegations of the parties.

for Magistrate Judge Robert W. Love-green in the United States District Court for the District of Rhode Island. (*Id.*). Thereafter, Porter worked as an associate in the litigation department of the New York law firm Rosenman & Colin LLP.

### B. *Plaintiffs Are Hired By the Firm*

Baird and Porter applied for associate positions at the Firm in late 1999 and early 2000, respectively. (*Id.* at ¶¶ 21, 25). Before they were interviewed, the Firm informed both that they would be placed on the non-partnership track if they were hired. (*Id.* at ¶¶ 22, 26–27). The Firm made offers of employment to both for the non-partnership track, and both accepted. (*Id.* ¶ 28). Both women claim that once their employment began, they realized that the non-partnership track was comprised exclusively of women. In contrast, they contend, all male associates were hired onto the partnership track. (*Id.* ¶ 30).

### C. *The Alleged Discrimination*

Baird and Porter maintain that they were at least as qualified as their male counterparts on the partnership track. (*Id.* ¶ 44). They claim that they performed essentially the same work as their male counterparts, and were billed out at comparable or higher rates. (*Id.* ¶¶ 53, 55). Yet, Baird and Porter contend that they received substantially less pay and smaller bonuses. (*Id.* ¶ 56, 65). They contend that other women at the Firm shared their experience, as they were consigned to the non-partnership track and were paid substantially less than their male peers for essentially the same work. (*Id.* ¶ 67).

Baird and Porter describe the Firm's "discriminatory policies and practices" of creating and maintaining a segregated class of lower paid and lower status female employees as demoralizing and degrading. (*Id.* ¶ 5, 73). They claim their working conditions became so intolerable they were compelled to resign to save their careers.

(*Id.* ¶ 75). Baird left the Firm on January 12, 2001, and Porter left on February 15, 2001. (*Id.* ¶ 79).

### D. *Plaintiffs Threaten Suit*

After Baird and Porter left the Firm, their attorney, Hillary Richard, contacted the Firm. (Richard Aff. ¶ 24 & Ex. A). By letter dated February 7, 2001, Richard advised the Firm of Baird and Porter's "claims ... arising out of their employment with [the Firm]" and enclosed a draft discrimination charge they intended to file with the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* Ex. A). Richard requested a response if defendants wished to try to resolve the claims before her clients filed charges. (*Id.*). Counsel for the Firm responded, and on February 28, 2001, Baird and Porter accompanied their lawyers to a meeting with counsel for the Firm. (Richard Aff. ¶ 25).

At the meeting, Richard outlined her clients' prospective claims under the Equal Pay Act, Title VII, and New York State's equal pay and human rights laws. (*Id.*). She also stated that her clients together could potentially recover $1.25 million in damages if successful on all their claims. (6/12/02 Hr'g at 17:5–10). Richard also explained that her clients sought specific changes in the Firm's allegedly discriminatory practices, such as increases in pay and status for women attorneys employed by the Firm, to mirror the conditions enjoyed by the men. (*Id.*).

The same day, counsel for the Firm wrote a letter to Richard memorializing the substance of their meeting. (*Id.* Ex. B). The letter confirmed Richard's estimation of $1.25 million as the total damages her clients could recover. (*Id.*). It also set forth the Firm's counsel's preliminary assessment of the viability of Baird and Porter's proposed claims. (*Id.*). The letter closed with a suggestion that the

parties meet to further discuss the issues, and to engage in mediation if an agreement could not be reached. (*Id.*).

Both sides agreed to try mediation and the Firm agreed to discuss settlement only through mediation. (*Id.* ¶ 27). The parties disagreed, however, on the issues subject to mediation and the payment of the mediator's fee, plaintiffs' attorneys' fees, and costs. Attempts at mediation were thereafter abandoned. (*Id.* ¶¶ 28–31).

**E. *Plaintiffs File EEOC Charges***

Baird and Porter filed charges of discrimination with the EEOC on April 2, 2001 against the Firm and two of its partners, David Boies and Robert Silver, alleging discrimination "with respect to their compensation, terms, conditions, and privileges of employment because of their gender in violation of" Title VII, the Equal Pay Act, and New York State's Equal Pay and Human Rights Laws. (*Id.* Exs. G & H; Defs. Opp'n Fees at 3). In response, the Firm, Boies, and Silver filed a detailed position statement with the EEOC dated June 1, 2001, and on August 24, 2001, Baird and Porter submitted a reply thereto. (Richard Aff. ¶ 34 & Exs. I–J).

By letter dated October 12, 2001, before filing the complaint in this action, Richard informed counsel for the Firm of her clients' intent to file a complaint on their Equal Pay Act claims. The Firm did not respond. (Richard Aff. ¶ 36 & Ex. K).

**F. *Plaintiffs File This Case***

Baird and Porter filed the complaint in this action on January 15, 2002, alleging that defendants intentionally discriminated against them because of their gender in their employment with the Firm by maintaining separate tracks for male and female associate attorneys in the Firm's Armonk office. Baird and Porter claimed that defendants segregated all women, except one, onto a "non-partnership track"

that was exclusively female. By contrast, they claimed, the "partnership track," with one exception, was exclusively male. (Compl. ¶ 2). The complaint asserted claims for wage discrimination in violation of the federal Equal Pay Act and New York State's Equal Pay Law, and disparate treatment and constructive discharge in violation of the New York State Human Rights Law. The complaint also noted the charges of discrimination pending before the EEOC, as well as plaintiffs' intent to amend the complaint to add claims under Title VII upon receipt of a notice of right to sue letter. (Compl. ¶ 12). The complaint sought legal and equitable relief including back pay, future earnings, and lost benefits; as well as compensatory damages for emotional injury, and attorneys' fees and costs. It did not include a specific monetary demand.

**G. *Defendants Answer Plaintiffs' Allegations***

The Firm filed its answer on February 28, 2002, and defendants Boies, Silver, and Philip Korologos, another member of the Firm, filed their answers on March 20, 2002. In their answers, defendants denied that they ever engaged in discrimination, and sought to refute the allegations of the complaint, in detail.

Defendants assert that since the Firm was founded in 1997, four new partners have been added at the Armonk office— two men and two women. (Answer of the Firm ¶ 3). Of these four, two—one man and one woman—made partner based on their experiences prior to joining the Firm. The remaining two attorneys were promoted to partner from senior attorney positions—again, one man and one woman. In addition, defendants state that, during plaintiffs' tenure with the Firm, eight attorneys were promoted to partner from

senior attorney status in all of the Firm's offices—four women and four men. (*Id.*).

Defendants use the terms "senior attorneys" and "associates" to classify attorneys in the Firm's two-tier designation system. (*Id.* ¶ 2(j)). These terms apparently correspond to what plaintiffs refer to as the partnership and non-partnership track. In general, associates are paid a set salary and a bonus, which is usually lower than what is paid to senior attorneys. At the end of their first year, however, and each year annually thereafter, associates receive merit salary increases and are considered for promotion to senior attorney. (*Id.* ¶ 2(m)).

Baird was hired on January 10, 2000. Defendants state that she "did not have a distinguished record, had never worked at a private law firm, and had not done any meaningful civil litigation." (*Id.* ¶ 22). Accordingly, Baird was told that if she were hired, she would be an associate. (*Id.*). The differences between senior attorneys and associates were clearly explained to Baird, and she accepted the Firm's offer of employment as an associate. (*Id.* ¶ 28). Baird's starting annual salary was $102,000, and she received total compensation of $122,626 for her period of employment, of less than one year, with the Firm. (*Id.* ¶ 22). As discussed more fully below, Baird testified at her deposition, and I so find, that she learned through a headhunter of an opening at the Firm for a "non-partnership track" position and she applied for that position. Hence, she was not "relegated" to a non-partnership track position. Rather, she specifically applied for one.

Porter was hired on April 17, 2000. Defendants state that Porter met none of the criteria to warrant being hired as a senior attorney. (*Id.* ¶ 27). At the time of her interview, Porter had been with her prior employer, Rosenman & Colin, for only four months. (*Id.* ¶ 24). In addition, at her interview, Porter requested defendants not check her references at Rosenman & Colin. The request was honored. (*Id.*). Finally, the differences between senior attorneys and associates were clearly explained to Porter, and she accepted the Firm's offer of employment as an associate. (*Id.*). Porter's starting annual salary was $114,000, exactly her base salary at Rosenman & Colin when she left that firm. (*Id.*).

Defendants maintain that the Firm has never discriminated in hiring, promotion, compensation, or other treatment of employees on the basis of gender. (*Id.* ¶ 2(b)). They assert that neither plaintiff ever complained of discrimination or anything else while employed at the Firm; neither plaintiff attributed her resignation to a discriminatory working environment. (*Id.*). In fact, defendants point out that Porter announced that she was leaving the Firm because her husband had taken a job in Rhode Island. (*Id.* ¶ 2(f)). Several weeks later, however, Porter met with two of the Firm's partners and indicated that she was prepared to bring claims of gender discrimination against the Firm if it did not pay her a sum of money and abolish its two-tiered system of classification between associates and senior attorneys. (*Id.* ¶ 76).

## H. *The Initial Pretrial Conference*

The Court held an initial conference on March 22, 2002. Noting the charges pending before the EEOC, the Court encouraged plaintiffs to amend the complaint to add their Title VII claims immediately on receipt of the right to sue letter. Defendants proposed filing motions to dismiss certain claims in the complaint, but the Court discouraged motion practice at that time. The Court set a discovery cut-off of July 19, 2002, and scheduled a settlement conference for April 15, 2002.

The parties commenced discovery. Plaintiffs were served with 355 requests for admission, twenty document requests, and eighteen interrogatories, and they, in turn, served document requests, interrogatories, and third-party subpoenas. (Richard Aff. ¶¶ 39–40). In addition, plaintiffs state that they largely completed their responses to defendants' discovery requests (although they were not due until April 26, 2002, and therefore were not served on defendants before the case settled). (*Id.* ¶¶ 73, 39). Defendants also deposed Baird on April 11, 2002. Plaintiffs apparently attempted to schedule Boies's deposition, without success. (Richard Aff. ¶¶ 42–43).

## I. *The Settlement Conference*

The Court held a settlement conference on April 15, 2002.[2] With the exception of Silver, all parties were present. The Court met with both sides, separately and together, for approximately two hours. Each side privately discussed the allegations of the complaint with the Court, as well as its views as to the merits of the case. The Court also inquired as to the evidence the parties believed supported their views. During the conference, plaintiffs' counsel described the non-partner-ship track as a "female ghetto." Plaintiffs made a final settlement demand of $375,000, which included an estimated $75,000 in attorneys' fees. Defendants' final counteroffer was $75,000, all inclusive. The Court evaluated the case for settlement purposes, recommending that the case settle for a total of $135,000. The parties did not reach a settlement that day.

## J. *The Offers of Judgment*

On April 17, 2002, just two days after the settlement conference, defendants made offers of judgment pursuant to Fed. R.Civ.P. 68 to each plaintiff in the amount $37,500. (Defs. Opp'n Fees at 4 & Exs. A–B).[3] The offers stated that they were "not to be construed as an admission that [d]efendants are liable in this action, or that either [plaintiff] has suffered any damage." They also stated that acceptance "shall constitute full and complete satisfaction of each and every claim asserted ... against [d]efendants." In addition, the offers provide for "reasonable costs and attorney[s'] fees" as determined by the Court in a separate proceeding through a petition to the Court. (*Id.* Exs. A–B).

2. Although settlement discussions and offers to compromise are normally inadmissible, *see* Fed.R.Civ.P. 408, plaintiffs "opened the door" by disclosing details of the conference in their moving papers. Defendants followed plaintiffs' lead in their opposing papers, by disclosing further details of the conference as well. By the parties' actions, therefore, these facts are now a matter of public record.

3. A Rule 68 offer of judgment allows a party defending against a claim to consent to judgment for the amount specified in the offer of judgment at any time until 10 days before the trial begins, with costs then accrued. Significantly, if the offeree declines to accept the offer of judgment and proceeds with her case, and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after

the making of the offer." Fed.R.Civ.P. 68. As the Supreme Court has also held, "[c]ivil rights plaintiffs—along with other plaintiffs—who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney[s'] fees for services performed after the offer is rejected." *Marek v. Chesny,* 473 U.S. 1, 10, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). The Court explained that in such a circumstance, although the plaintiff is "technically the prevailing party," she has not received any monetary benefits from the "postoffer services" of her attorney. *Id.* at 11–12, 105 S.Ct. 3012. *See also Ortiz v. Regan,* 980 F.2d 138, 140 (2d Cir.1992) ("Rule 68 permits a party defending against a claim to make a settlement offer and thereby avoid any liability for costs, including attorney's fees, incurred after the making of the offer.") (citing *Marek,* 473 U.S. at 10, 105 S.Ct. 3012).

Baird and Porter served notices of acceptance of the offers of judgment on April 25, 2002. (Richard Aff. ¶ 47 & Exs. N–O). The same day, plaintiffs issued a press release, claiming, "This suit was about fairness and changing a system that stigmatized women; it was never about money." (4/25/02 Press Release). Plaintiffs claimed that they accepted the offers of judgment after learning that the Firm had made changes with respect to their treatment of women. (*Id.*). The Firm vehemently denies that it changed its practices or policies in any way as a result of plaintiffs' lawsuit. (6/12/02 Hr'g at 37:16–19).

## K. *The Fee Application*

On April 26, 2002, the Court issued an order directing the parties to confer in an effort to resolve the issue of attorneys' fees and costs. The order also set a briefing schedule for plaintiffs' fee application in the event the parties did not resolve the issue in their own. Finally, the order scheduled a hearing on the fee application, if necessary, for June 12, 2002.

The parties briefed the fee application and appeared for the hearing. At the outset, the Court informed counsel for both parties that it had a full record with respect to evidentiary material, but noted numerous factual disputes. The Court inquired as to whether the parties were satisfied with just presenting argument or whether they wished to present evidence as well. Counsel for both sides replied that they did not wish to present evidence. (6/12/02 Hr'g at 2:1–12). The Court thus heard argument and reserved decision.

## DISCUSSION

Baird and Porter request attorneys' fees of $191,048.33 and costs of $7,506.23 pursuant to defendants' Rule 68 offers of judgment, the Equal Pay Act, 29 U.S.C.

§ 216(b), and Title VII, 42 U.S.C. § 2000e–5(k). More precisely, plaintiffs seek attorneys' fees of $124,372.58 and costs of $5,511.13 for legal work performed in pursuit of the discrimination claims (the "initial request"); and a "supplemental request" of attorneys' fees of $66,675.75 and costs of $1,995.10 for preparing this fee application. Defendants oppose the motion on essentially four grounds: (1) plaintiffs' claimed number of hours is excessive; (2) plaintiffs' claimed hourly rates are excessive; (3) plaintiffs' total lodestar calculation is excessive in light of plaintiffs' limited success; and (4) certain costs claimed by plaintiffs are unreasonable and should be eliminated.[4] For the reasons set forth below, I conclude that both the initial request and the supplemental request are excessive; the requests are therefore reduced.

## I. *Applicable Law*

### A. *Entitlement to Attorneys' Fees and Costs*

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs" in civil rights actions. *See Raishevich v. Foster,* 247 F.3d 337, 344 (2d Cir.2001). The Second Circuit has explained that the award of attorneys' fees is designed to " 'encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.' " *Id.* (quoting *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir. 1982)).

The Supreme Court has held that success on any significant issue in litigation that achieves "some of the benefit" sought is sufficient to qualify a plaintiff

---

**4.** Defendants' opposition does not address the "supplemental request," as plaintiffs only set

forth the monetary demands of this request in their reply memorandum.

as a "prevailing party" for attorneys' fees purposes. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation omitted); *see Lyte v. Sara Lee Corp.,* 950 F.2d 101, 103 (2d Cir.1991). At a minimum, the plaintiff "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland .Indep. School District,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (citations omitted). A plaintiff involved in litigation ultimately resolved by settlement may be considered a prevailing party if the relief obtained is "of the same general type" as the relief sought. *Raishevich,* 247 F.3d at 345 (citation omitted); *see also Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees."). The Second Circuit has also found that a plaintiff who accepts a Rule 68 offer of judgment can qualify to be a "prevailing party" entitled to attorneys' fees and costs. *Sara Lee,* 950 F.2d at 104.

In addition, a prevailing party is entitled to reimbursement for time reasonably expended in preparing the fee application. *Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. District,* 71 F.3d 1053, 1059 (2d Cir.1995). "If the fee claims are exorbitant," however, or the "time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." *Id.* (quoting *Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir.1979)).

Finally, under § 1988, a prevailing party is entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998).

**B. Calculation of Fees**

**1. The Lodestar**

Courts typically use a "lodestar" figure as an initial estimate of a reasonable fee. This figure is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved. *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992) (citing *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)).

Thus, using the lodestar approach, the Court assesses the reasonableness of the number of hours expended, as well as the reasonableness of the requested rates. Under § 1988, plaintiffs are entitled to reasonable hourly rates that fall within the prevailing marketplace rates "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The relevant community for a fee determination is the judicial district in which the trial court sits—here, the Southern District of New York. *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 232 (2d Cir.1987). In addition to looking at prevailing marketplace rates, the Court may rely on its own knowledge of comparable rates charged by lawyers in the district. *Ramirez v. New York City Off–Track Betting Corp.,* No. 93 Civ. 0682, 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997).

**2. Adjustments**

Although there is a "strong presumption" that the lodestar figure represents a reasonable fee, *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Other consid-

erations may lead to an upward or downward departure from the lodestar. *Id.* For example, upon a showing that plaintiffs' success was limited, the lodestar figure may be downwardly adjusted. *Id.; Quaratino,* 166 F.3d at 425. Here, defendants argue that the requested lodestar figure must be so reduced because plaintiffs achieved only limited success.[5]

■ " '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933); *N.A.A.C.P. v. Town of East Haven,* 259 F.3d 113, 117 (2d Cir.2001). The Supreme Court has reasoned that if a plaintiff achieves only limited or partial success, the lodestar amount may be excessive. *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.*

In *Farrar,* the Supreme Court held that a plaintiff who wins only "nominal damages" is a prevailing party for purposes of a fee award under § 1988, but the Court also held that such a plaintiff's lack of success had to be considered in determining the amount of fees. The Court wrote:

> In some circumstances, even a plaintiff who formally "prevails" under § 1988 should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party.... When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all. 506 U.S. at 115, 113 S.Ct. 566.

At the same time, however, courts have expressly rejected a *per se* "proportionality" rule, *i.e.,* proportionally linking the prevailing plaintiff's attorneys' fee to the degree of monetary success the plaintiff achieved. *City of Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). As the Supreme Court has held:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Id.* In *Riverside,* the Court upheld an award of $245,456.25 in fees even though plaintiffs had recovered only $33,350 in both compensatory and punitive damages. *Id.* at 564–65, 106 S.Ct. 2686.[6]

In some respects, the two concepts appear at odds. On the one hand, the limited nature of a prevailing plaintiff's success is a basis for reducing a fee award. On the other hand, a limited monetary recov-

---

**5.** Defendants also argue that plaintiffs' award should be reduced because their failure to settle at an earlier stage demonstrates bad faith under the circumstances. I find no evidence of bad faith in plaintiffs' failure to settle the case earlier. *See N.A.A.C.P. v. Town of East Haven,* 259 F.3d 113, 119 (2d Cir.2001).

**6.** The Second Circuit has also rejected a "billing judgment" approach whereby a plaintiff's attorney is expected to anticipate, in advance, what a plaintiff's possible (or likely) recovery is and then to expend on the case only the amount of time that the case warrants, as a financial matter. *Quaratino,* 166 F.3d at 425–26.

ery does not preclude a substantial attorneys' fee award, for there is no requirement of proportionality.

■ In fact, the concepts are not at odds. If a prevailing plaintiff recovers only limited monetary damages, that lack of success is to be considered by a court in setting the amount of attorneys' fees. Lack of monetary success, however, does not *require* a fee reduction. Rather, the degree of monetary success (or lack thereof) is only one factor to be considered. Courts must also consider whether the plaintiff has achieved some other measure of success. In awarding attorneys' fees that exceeded plaintiffs' recovery, the Court in *Riverside* recognized that "a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *City of Riverside*, 477 U.S. at 574, 106 S.Ct. 2686. Thus a civil rights plaintiff may obtain important equitable or declaratory relief, or he or she may achieve some other non-monetary vindication of his or her civil rights, by, for example, establishing the violation of an important civil or constitutional right. These non-monetary measures of success must be considered as well in setting the amount of a fee award.[7]

## II. *Application*

### A. *Entitlement to Attorneys' Fees and Costs*

■ In this case, defendants do not challenge plaintiffs' entitlement to an award of fees and costs, and instead focus their attack on the amounts requested. Nonetheless, because defendants object principally on the ground of lack of success, before I address the reasonableness of the award, I first consider whether plaintiffs are prevailing parties within the meaning of § 1988.

Here, the complaint sought both legal and equitable relief, and plaintiffs ultimately accepted offers of judgment for $37,500 each. Thus, plaintiffs achieved at least "some of the relief requested," of the same general type as that demanded in the complaint. Further, because a judgment for any amount of damages " 'modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay,' " *Raishevich*, 247 F.3d at 345 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)), a settlement is also a " 'resolution of the dispute which changes the legal relationship' between the parties." *Sara Lee*, 950 F.2d at 104 (quoting *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. 1486).

The Supreme Court has noted that a plaintiff's success must be more than "de minimus" or "technical" to give rise to a prevailing party determination under § 1988. *Texas Teachers*, 489 U.S. at 792, 109 S.Ct. 1486. The Second Circuit has found, however, that "in and of itself $9,500 is not a 'de minimus' amount" for purposes of attorneys' fees. *Sara Lee*, 950 F.2d at 104. In *Sara Lee*, a race discrimi-

---

7. Consider, for example, the civil rights litigant who brings a claim under the wage and hour laws. Even if the plaintiff recovers the maximum possible damages, she may recover only a modest amount if she is employed in a position that pays only a modest salary, such as a waiter or waitress in a restaurant. In view of her excellent results, however, her attorney likely deserves a full award of fees. Yet if attorneys' fees were proportionally tied to a plaintiff's recovery, however, the award would necessarily be low. Accordingly, in rejecting a rule of proportionality, the Supreme Court sought to avoid precisely this result. *See, e.g., Ayres v. 127 Restaurant Corp.*, No. 96 Civ. 1255(DC), 1999 WL 328348 (S.D.N.Y. May 21, 1999) (noting that attorneys' fees award should not be reduced merely because plaintiffs' monetary recoveries were modest, where plaintiffs were "everyday workers" who were members of restaurant wait staff).

nation case, the Second Circuit reversed the district court's finding that acceptance of the $9,500 offer of judgment did not materially alter the legal relationship of the parties, and held that plaintiff was a prevailing party for purposes of attorneys' fees. *Id.* at 102–04 (citing *Stefan v. Laurenitis,* 889 F.2d 363, 369 (1st Cir.1989) (finding $8,000 settlement to each of two plaintiffs was not "de minimus" or "nuisance" type award even where complaint sought $1,900,000)). Applying this reasoning, plaintiffs here have met this burden by accepting offers of judgment totaling $75,000, exclusive of fees and costs; their success was not merely "de minimus" or "technical" and they are prevailing parties for purposes of § 1988.

## B. *Calculation of Fees*

Having concluded that plaintiffs are prevailing parties for purposes of § 1988, I must decide what constitutes a reasonable attorneys' fee in this case. First, I address plaintiffs' initial request, and second, the supplemental request.

### 1. *The "Initial Request"*

#### (a) *The Lodestar*

The lodestar figure for plaintiffs' initial request is calculated as follows:

| | Hours | Rate | Total |
|---|---|---|---|
| Hillary Richard | 139.17 | $375 | $52,188.75 |
| Laurie Edelstein | 249.55 | 300 | 74,865.00 |
| Susan Brune | 5.40 | 375 | 2,025.00 |
| Dorothy Mitchell | 4.05 | 275 | 1,113.75 |
| Paralegal | 12.10 | 60 | 726.00 |
| Total | 410.27 | | $130,918.50 |

Plaintiffs are not seeking compensation for all hours expended and have excluded hours that they concede are "excessive, redundant, or otherwise unnecessary." (Richard Aff. ¶¶ 64–65). In addition, plaintiffs voluntarily imposed an overall 5% discount to the lodestar, further reducing their total amount requested to $124,372.58. (*Id.* ¶¶ 75–76). Defendants argue that plaintiffs' fee request is excessive. Specifically, defendants claim that

the number of hours is excessive, the hourly rates are excessive, and the total lodestar calculation is excessive in light of plaintiffs' limited success. I address these arguments in turn.

#### (i) *Number of Hours*

■ Defendants argue that plaintiffs' lodestar hours must be reduced because plaintiffs cannot be compensated for work on claims that were not part of the lawsuit. In particular, defendants object to the inclusion of time spent on Title VII claims plaintiffs "chose not to bring as part of their lawsuit" and state law claims not inextricably intertwined with their Equal Pay Act claims. (Defs. Mem. Opp'n Fees at 4). In addition, defendants argue that the claimed hours are excessive for a case that concluded after only four months of litigation. These arguments are rejected for the following reasons.

First, plaintiffs did not *choose* to omit their Title VII claims from their complaint; rather, they were awaiting a right to sue letter from the EEOC—a prerequisite to bringing a Title VII claim in federal court. In fact, as we discussed at the initial conference, plaintiffs fully intended to amend their complaint to add the Title VII claims as soon as they received a right to sue letter. Thus, all parties were aware that plaintiffs intended to add claims under Title VII, a logical outgrowth of the legal work performed on those claims. Moreover, the parties and the Court were proceeding as if the Title VII claims were a part of the case; it was simply a matter of time before the complaint was amended and these claims were added.

Second, more significantly, all of plaintiffs' claims—whether styled as Equal Pay Act, Title VII, or state law claims—involve a common core of facts resulting in one injury. The legal claims interrelated and overlapped; plaintiffs' EEOC charges alleged violations of Title VII, the Equal Pay

Act, and New York State's Equal Pay and Human Rights Laws based on the same factual allegations. (Richard Aff. Exs. G–J; Defs. Opp'n Fees at 3). This work was naturally repackaged when plaintiffs decided to file their complaint. On comparing plaintiffs' submissions to the EEOC with the complaint in this case, it is evident that the time spent on factual investigation and analysis in the one case would have been essential in the other. In short, the claims all share a common core of facts and legal issues; counsel's time spent pursuing "alternative ways to obtain relief" is therefore compensable. *United States Football League v. NFL*, 887 F.2d 408, 414 (2d Cir.1989) (affirming award of fees allowing compensation for time on all claims where claims involved a "common core of facts" "based on related legal theories" even though only one claim was successful; approving district court's reduction of overall fee award to account for plaintiff's lack of success) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (noting that fees may be awarded for unsuccessful as well as successful claims where they are " 'inextricably intertwined' " and " 'involve a common core of facts or are based on related legal theo-

ries' ") (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir.1996) (citation omitted)); *Dominic v. Consolidated Edison Co. of New York*, 822 F.2d 1249, 1259–60 (2d Cir.1987) (affirming award of fully compensatory fee where factual and legal theories underlying unsuccessful age discrimination and successful retaliation claims were inextricably intertwined court, finding that plaintiff "recovered the same relief on the retaliation claim that he would have on his discrimination claim").[8]

Finally, in some respects, 410 hours is high for a case that did not go to trial. Nevertheless, counsel's representation of Baird and Porter spanned approximately a year and one-half and included, among other things, background investigation and analysis; drafting the EEOC charge of discrimination and supporting appendix, as well as the rebuttal submission; and the federal court complaint. Counsel also engaged in numerous settlement discussions, two court conferences, and some discovery, including defending one deposition, drafting document requests and interrogatories, and largely completing their responses to defendants' 355 requests for admission, twenty document requests, and eighteen interrogatories.[9]

---

**8.** *See also New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 65, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (holding, in Title VII action, that attorneys' fees may be properly awarded for time spent before a state administrative agency); *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir.1987) (finding that fee award properly included time spent on administrative proceedings that were a prerequisite to the action).

**9.** Defendants also cite *Bonner v. Guccione*, 178 F.3d 581 (2d Cir.1999), to support their claim that plaintiffs should not be compensated for work performed on Title VII claims they failed to assert. *Bonner* is distinguishable from the case at bar, however, precisely because the plaintiffs here did *not* assert their

Title VII claims and settled the case without going to trial. In *Bonner*, the plaintiff took her Title VII claims to a jury, and while she received a finding of liability on the hostile work environment Title VII claim, the jury declined to award compensatory or punitive damages. 178 F.3d at 585. On appeal, the Second Circuit found that plaintiff was therefore not a "prevailing party" on that claim and, as a result, could not recover attorneys' fees for work performed on that claim. *Id.* at 593 ("The law is clear that . . . a finding of liability without awarding damages [does not permit an] award of attorney's fees to plaintiff as a prevailing party.") (citing *Farrar*, 506 U.S. at 111–12, 113 S.Ct. 566). By contrast, plaintiffs here are "prevailing parties" by virtue of their acceptance of the Rule 68 offer of judgment.

#### (ii) *Hourly Rates*

 Defendants also argue that the hourly rates sought by plaintiffs' counsel are excessive and should be reduced. I disagree.

The requested hourly rates of $375 for Richard and $300 for Laurie Edelstein are reasonable. Richard is a partner with fourteen years' experience as an attorney. Edelstein is an associate with ten years' experience. Both produced first-rate work in this case. Their requested rates are within the range of rates charged by practitioners in the field (*see* Goodman Aff. & Outten Decl.), and are comparable to rates awarded to employment law attorneys of similar skill and experience. *See, e.g., Brenlia v. LaSorsa Buick Pontiac Chevrolet, Inc.,* No. 00 Civ. 5207, 2002 WL 1059117, at *13 (S.D.N.Y. May 28, 2002) (awarding rates of $345 for partner with twelve years' experience and $270 and $175 for senior and junior associates, respectively); *Gonzalez v. Bratton,* 147 F.Supp.2d 180, 211–12 (S.D.N.Y.2001) (awarding rates ranging from $390 to $180 for the most senior to the most junior attorneys, even though rates were "at high end" for attorneys in small firm); *Colbert v. Furumoto Realty, Inc.,* 144 F.Supp.2d 251, 260 (S.D.N.Y.2001) (awarding rates of $325 and $300 for lead attorneys); *Marisol A. v. Giuliani,* 111 F.Supp.2d 381, 386–87 (S.D.N.Y.2000) (awarding rates of $375 for lead counsel and $300 for counsel with ten years of experience); *Skold v. American Int'l Group, Inc.,* No. 96 Civ. 7137, 1999 WL 405539, at *6–7 (S.D.N.Y. June 18, 1999), *aff'd,* 205 F.3d 1324 (2d Cir.2000) (awarding rates of $400 for experienced civil rights litigator and $275 for lead counsel); *Rodriguez v. McLoughlin,* 84 F.Supp.2d 417, 421–23 (S.D.N.Y.1999) (awarding $425 for experienced civil rights senior partner at large firm). Finally, I conclude that the requested hourly rate of $60 for plaintiffs' paralegal is also reasonable.

#### (b) *Adjustments for Limited Success*

 The principal issue is whether plaintiffs' requested fee award must be reduced for lack of success. I conclude that the requested fees must be substantially reduced, for plaintiffs achieved only limited success. Indeed, I find that plaintiffs accepted the offers of judgment because they realized, as the case progressed, that they had little hope of success on the merits. I base my conclusion on the following:

First, plaintiffs achieved remarkably little in comparison to what they sought. At the parties' first meeting, plaintiffs' counsel estimated potential damages of $1.25 million if plaintiffs were successful on their claims. Although negotiations often require some posturing, a final recovery of $37,500 per plaintiff is conspicuously lean, considering that plaintiffs are attorneys whose annual compensation well exceeded $100,000 when they were allegedly constructively discharged by the Firm. In addition, although plaintiffs have claimed that the case "was never about money" and that they accepted the settlement after learning that the Firm made changes in response to their lawsuit, any such change is fiercely disputed by the defendants, and the record simply does not bear out plaintiffs' contention that they forced the Firm to make any changes.

Second, although the record before the Court is limited, the available evidence belies plaintiffs' claims of discrimination. For example, in their complaint, plaintiffs claim that they were relegated to the "non-partnership track" because they are women. Yet Baird admitted in her deposition that she applied to the Firm through a headhunter, and that: "I was told by [the headhunter] there was an opening on the

non-partnership track and that is what I went to apply for. That is what I was applying for." Baird was also asked, "Do you think there was anything discriminatory in putting out a notice that says we would like to hire a non-partnership track lawyer?" and she answered "No." (Baird Dep. at 97:2–5; 285:3–7). Thus, because she *applied for* and accepted a position on the non-partnership track, Baird cannot credibly argue that the Firm forced her onto the non-partnership track—with discriminatory intent. Moreover, although plaintiffs argue that they were discriminated against in terms of compensation and bonuses because they were on the non-partnership track, both plaintiffs resigned their employment at the Firm too early to legitimately assess whether the Firm's promotion policies were in fact discriminatory: Baird left the Firm approximately 12 months after she was hired, and Porter left after only approximately 10 months, before they could be evaluated for bonuses and possible promotion.

Third, although plaintiffs claim that they were constructively discharged and "compelled to resign" "to save their legal careers" (Compl. ¶ 75), the record contains substantial evidence to show that plaintiffs chose to leave the Firm voluntarily, for personal reasons. Baird stated that in April 2000, after she had been at the Firm for barely three months, she was "starting to look for a house in Connecticut ... in case I want to go into practice for myself someday"; shortly thereafter, she made a down payment on a home in Lichtfield, Connecticut—more than eighty miles away from the Firm; and she executed a lease renting office space in Lichtfield on January 11, 2001. (Baird Dep. at 175:20–25; Defs. Mem. Opp'n Fees at 15 n. 6 & Exs. 12A–E). In addition, defendants have presented evidence that Porter "missed the Rhode Island pace" and hoped to return, but did not think her husband could find desirable employment. In November of

2000, however, just seven months after Porter joined the Firm, her husband obtained a contract for work in Rhode Island. (Defs. Mem. Opp'n Fees at 15 n. 6 & Exs. 13A–C). Porter left the Firm in February of 2001.

Fourth, it is clear that defendants' offers of judgment and plaintiffs' acceptance thereof reflected a recognition by both sides that plaintiffs were unlikely to prevail in this litigation. The offers of judgment were made just two days after the settlement conference conducted by the Court, and just six days after Baird was deposed. Baird's deposition testimony was less than compelling, and at the settlement conference plaintiffs had little to offer in terms of specifics while defendants provided many details, including names and numbers, to rebut the charges of discrimination. Faced with the Rule 68 offers of judgment and the prospect of having to pay costs if they did not fare better than $37,5000 each, plaintiffs accepted the offers of judgment. Given plaintiffs' counsel's skill and determination, I am confident that plaintiffs would have rejected the offers of judgment if plaintiffs and their counsel had thought they had a reasonable chance of prevailing in the litigation. Finally, the amounts offered by defendants clearly were just a fraction of what it would have cost defendants, both in terms of fees and expenses to defend the case as well as revenues lost from the time the principals of the Firm (including Boies) would have had to devote to defending the case. Their decision to make the offers of judgment was in no way a recognition of any liability.

In the end, plaintiffs' success was limited. Plaintiffs recovered only $37,500 each, by accepting Rule 68 offers of judgment in circumstances that strongly suggest they realized their efforts ultimately were likely to fail. They obtained no declaratory or

injunctive relief, and there was no finding or adjudication of discrimination. Plaintiffs' rights were not "vindicated" in any meaningful way, and the public interest in civil rights enforcement was not significantly advanced. Accordingly, I impose an overall 60% reduction to plaintiffs initial request, and award attorneys' fees in the amount of $49,749.03.

### (c) *Costs*

I find the expenses set forth in plaintiffs' initial request to be reasonable, and award full costs of $5,511.13.

### 2. *The "Supplemental Request"*

█ Plaintiffs also make a "supplemental request" for attorneys' fees of $66,675.75 and costs of $1,995.10 for preparing and defending this fee application.

The lodestar figure for the supplemental request for the period from May 1, 2002 to June 10, 2002 is calculated as follows:

| | Hours | Rate | Total |
|---|---|---|---|
| Hillary Richard | 90.68 | $375 | $34,005.00 |
| Laurie Edelstein | 96.00 | 300 | 28,800.00 |
| Dorothy Mitchell | 26.40 | 275 | 7,260.00 |
| Paralegal | 2.00 | 60 | 120.00 |
| Total | 215.08 | | $70,185.00 |

Although plaintiffs have, again, excluded hours that they concede are "excessive, redundant, or otherwise unnecessary" and voluntarily imposed an overall 5% discount, the total amount of the supplemental request is still $66,675.75. (Richard Suppl. Aff. ¶ 18). While I again accept the requested hourly rates, the number of hours expended on this application is unreasonably excessive: plaintiffs expended more than 215 hours in roughly six weeks on this fee application—and only 410 hours over the course of fifteen months in the underlying proceedings. Thus, plaintiffs billed nearly *one-third of the total* number of hours expended on the case for time spent preparing and defending this fee application. I award fees on the supplemental request for ten percent of the amount I award on the initial request, *i.e.,*

$4,974.90. *See, e.g., Colbert,* 144 F.Supp.2d at 261–62 (recognizing that courts within the Second Circuit have awarded fee application awards in the range of eight to twenty-four percent of the total time claimed) (citing *Natural Resources Defense Council, Inc. v. Fox,* 129 F.Supp.2d 666, 675 (S.D.N.Y.2001); *Davis v. City of New Rochelle,* 156 F.R.D. 549, 561 (S.D.N.Y.1994); *Trichilo v. Sec'y of Health & Human Servs.,* 823 F.2d 702, *reaff'd and extended,* 832 F.2d 743 (2d Cir.1987)). Costs are allowed in the requested amount of $1,995.10.

### CONCLUSION

For the reasons set forth above, plaintiffs are awarded fees and costs on their initial request of $49,749.03 and $5,511.13, respectively, and on their supplemental request of $4,974.90 and $1,995.10, for a total award of attorneys' fees of $54,723.93 and costs of $7,506.23.

SO ORDERED.