Chet HARDAWAY, Plaintiff,

v.

RIDGEWOOD CORP., Defendant.

Case No. 09–CV–2983 (KMK).

United States District Court,
S.D. New York.

March 19, 2010.

Marie Condoluci, Simon Haysom LLC, Goshen, NY, for Plaintiff.

Craig M. Bonnist, Bonnist & Cutro, LLP, Rye Brook, NY, for Defendant.

## ORDER

KENNETH M. KARAS, District Judge:

Plaintiff commenced this action on March 27, 2009, seeking, inter alia, $400,000 in statutory and liquidated damages for alleged unlawful termination in violation of the Family Medical Leave Act, 29 U.S.C. § 2601. (Compl.¶¶ 1, a-b.) Without any admission of liability, the Parties settled for $15,000, exclusive of attorneys' fees and costs on October 27, 2009 (3.75% of the original claim). (Notice of Acceptance of Rule 68 Offer of J.) On November 16, 2009, Plaintiff's attorney requested a judgment of $19,848.50 in attorneys' fees and $541.60 in costs. (Letter from Marie Condoluci, Esq., to the Court (Nov. 16, 2009) 4.) Defendant opposed Plaintiff's request on numerous grounds. (Letter from Catherine M. McVeigh, Esq., to the Court (Nov. 30, 2009).) The Court instructed the Parties to present affidavit evidence to the Court by January 14, 2010, and that it would hold a hearing on the reasonableness of the requested judgment. (Order, Dec. 10, 2009 (Dkt. No. 15).) At the hearing on January 25, 2010, the Parties represented that they could settle most of their differences, and so the Court withheld judgment.

Defendant does not dispute that Plaintiff is a prevailing party entitled to a judgment of attorneys' fees and costs, nor does Defendant argue that Plaintiff's hourly rate is unreasonable, or that there are any issues with regard to the time sheets Plaintiff submitted, other than those agreed to by the Parties. (Letter from Craig M. Bonnist, Esq., to the Court (Feb. 5, 2010) ("Def.'s Feb. 5 Letter").) Both Parties

agree that the appropriate fee award, if Plaintiff is entitled to a full award, is $17,329.15 in attorneys' fees and $541.60 in costs, for a total judgment of $17,870.75. (*Id.* at 3; Letter from Marie Condoluci, Esq., to the Court (Feb. 18, 2010) ("Pl.'s Feb. 18 Letter") 1.) The only dispute remaining is over whether the $17,329.15 in attorneys' fees should be "subject to at least a 60% reduction" due to Plaintiff's "limited success." (Def.'s Feb. 5 Letter 3, 5; Pl.'s Feb. 18 Letter 1.)

 Since the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany* (*Arbor Hill*), 522 F.3d 182 (2d Cir.2008), courts in the Second Circuit no longer use the "lodestar" method for computing attorneys' fees. *See Arbor Hill,* 522 F.3d at 190 ("The meaning of the term 'lodestar' has shifted overtime, and its value as a metaphor has deteriorated to the point of unhelpfulness. This opinion abandons its use." (footnote omitted)). Instead, a district court in the Second Circuit must:

> bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of the attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay. the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate

what can properly be termed the "presumptively reasonable fee."

*Id.* (first emphasis in original). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n. 3 (citing *Johnson v. Ga. Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974)).

 There are two ways that the Court could consider the degree of Plaintiff's success: as one of the factors that should be evaluated in determining the "presumptively reasonable fee;" or as an equitable factor that should cause the Court to award an amount less than the "presumptively reasonable fee." Arguing in favor of the former interpretation of *Arbor Hill* is that "the results obtained" is one of the *Johnson* factors. *See Konits v. Valley Stream Cent. High Sch. Dist.,* No. 08–CV–4351, 2009 WL 3424830, at *2 (2d Cir. Oct. 26, 2009) (summary order) (criticizing a district court for providing inadequate reasons for "reductions for limited success" "particularly in view of the judge's comparatively limited involvement in the case which would . . . inhibit his consideration of the *Johnson* factors"). Furthermore, if courts calculate a "reasonable hourly rate." use that rate to calculate a "presumptively

reasonable fee," and then turn around and consider equitable factors which argue in favor of departing from the "presumptively reasonable fee," then district courts might find themselves back in the quandary *Arbor Hill* intended to solve by employing two analytical steps that seem to consider the same factors. *See Arbor Hill*, 522 F.3d at 188–89 (describing the tension between cases suggesting that "district courts should use the *Johnson* factors to adjust the lodestar," and cases stating that "many of the *Johnson* factors are subsumed within the initial calculation [of the lodestar]" (internal quotation marks omitted)).

 However, several considerations favor the view that despite the presence of the "results obtained" among the twelve *Johnson* factors, district courts should calculate the appropriate "presumptively reasonable fee" and then consider whether to adjust the fee award for the degree of success the Plaintiff achieved. First, *Arbor Hills'* description of the *"presumptively reasonable fee"* itself suggests that there are factors (presumably not considered in the initial calculation) which can alter the presumption. Second, *Arbor Hill* described the goal of determining the "presumptively reasonable fee" as determining the amount "a reasonable, paying client" would be willing to pay. *Id.* at 190; *see also Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir.2009) ("The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay. given that such a party wishes to spend the minimum necessary to litigate the case effectively." (internal quotation marks omitted)). Reasonable, paying clients make their decisions about what they arc willing to pay before the result is known—otherwise a reasonable, paying client who loses would never pay anything, nor would a reasonable, paying client ever pay attorneys' fee greater than the recovery. *See, e.g, Barfield v. N.Y.*

*City Health & Hosps. Corp.*, 537 F.3d 132, 139, 153 (2d Cir.2008) (affirming a district court's award of $49,889 in attorneys' fees when the total recovery was $1,774.50). Third, since *Arbor Hill*, courts in the Second Circuit have continued the traditional practice of calculating a "reasonable fee" first, and then considering whether limited success mandates a percentage reduction. *See, e.g., Barfield*, 537 F.3d at 139–40 (describing, and approving, the district court's process of calculating the attorneys' fee award, which involved determining the appropriate number of hours, the appropriate hourly rate and, "after determining the lodestar figure," reducing it by 50% due to Plaintiff's "limited success in the litigation as a whole" (internal quotation marks omitted)); *Mugavero v. Arms Acres, Inc.*, No. 03–CV–5724, 2010 WL 451045, at *3–9 (S.D.N.Y. Feb. 9, 2010) (describing the *Arbor Hill* "presumptively reasonable fee" as an "initial estimate" and determining the reasonable hourly rates and the number of compensable hours before determining whether a fee reduction was appropriate for lack of success (internal quotation marks omitted)); *Olsen v. County of Nassau*, No. 05–CV–3623, 2010 WL 376642, at *2–6 (E.D.N.Y. Jan. 26, 2010) (stating that "the presumptively reasonable fee [is determined] by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate" and proceeding to do both before considering whether a reduction for limited success was warranted (internal quotation marks omitted)); *Saunders v. City of New York*, No. 07–CV–830, 2009 WL 4729948, at *7 (S.D.N.Y. Dec. 9, 2009) ("In sum, given the current attorneys' fees jurisprudence established by the Supreme Court and the Second Circuit, the *Johnson* factors are to be used in setting reasonable hourly rates)[,] but the resulting 'presumptively reasonable fee' is subject to further reduction due to, *inter alia*, plaintiffs' limited

success." (emphasis in original); *McDow v. Rosado,* 657 F.Supp.2d 463, 467, 469 (S.D.N.Y.2009) (noting that though "unstated," "the presumptively reasonable fee is just that—a presumptive figure that can be further adjusted as circumstances warrant," and proceeding to calculate a "presumptively reasonable fee" and then applying "a downward adjustment to reflect plaintiff's limited success").

The Court believes that the second approach, which is favored by other courts in this Circuit, is the correct approach. Nonetheless, given the tension between the two possible readings of *Arbor Hill,* the Court will consider both approaches. However, whether the approach is "multi-step or single step ... happily the result should be the same." *McDow,* 657 F.Supp.2d at 468. If considered as a single-step process, the Parties' agreement is that all of the factors the Court should consider weigh in favor of the agreed fee, save for the question of Plaintiff's success. If considered as a two-step process, the Parties' agreement is as to the value of the "presumptively reasonable fee." Either way, the Court must review the Parties' agreement and then determine the correct adjustment, if any, for limited success.

As a starting point, the Court examines the time-sheets submitted by Plaintiffs attorney, and the agreed-upon reductions. Plaintiff's counsel has agreed that a total of $2,186.25, representing 8.25 hours of work, be completely eliminated from the fee award. (Def.'s Feb. 5 Letter 2–3.) This reduction represents time spent on a related matter that should be billed to that related matter. Plaintiff's counsel also agrees that $41.60 should be completely eliminated as it is duplicative. (*Id.*) Finally, Plaintiff's counsel has agreed that $583, representing 2.2 hours of work, should be reduced by 50% for a total reduction of $291.50. (*Id.*) This reduction represents time that could reasonably be character-ized both as time spent on this matter and as time spend on the related matter. The Court therefore agrees with the Parties that a total reduction of $2,519.35 from Plaintiff's attorney's original request is warranted because otherwise the fees would be duplicative or impose liability on Defendant for a claim that is related but, ultimately, distinct. The Court also has examined the records submitted to the Court, agrees with the Parties that Plaintiff's attorney's fee request is reasonable in all other aspects and that it represents a reasonable hourly rate consistent with market rates in this District, and a reasonable expenditure of time that a reasonable, paying client would accept.

There are two basic situations in which a Court may reduce fees for limited success. There are cases with " 'distinctly different claims for relief that are based on different facts and legal theories,' " and cases "which 'present only a single claim' or which 'involve a common core of facts or will be based on related legal theories.' " *Kassim v. City of Schenectady,* 415 F.3d 246, 253 (2d Cir.2005) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In the former situation, courts should simply exclude time spent on unsuccessfully pursued, distinct claims, whereas in the latter situation, courts should engage in a case-by-case inquiry to determine " 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended ... [and where] plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.' " *Id.* (quoting *Hensley,* 461 U.S. at 435–36, 103 S.Ct. 1933). This ease presented a common core of facts leading to claims arising under identical, or substantially identical, legal theories.

Previous determinations are instructive. In *Barfield,* the Second Circuit affirmed the district court's decision to reduce the number of hours claimed to a reasonable number, and then further reduce "the lodestar figure" by 50% because the plaintiff had failed in her "primary aim" by failing to gain "collective action certification." *Id.* at 139–40, 152–53. Here, Plaintiff achieved his primary goal by receiving monetary compensation, though Plaintiff did not achieve nearly as much as he initially requested. However, in *Kahlil v. Original Old Homestead Rest., Inc.,* 657 F.Supp.2d 470 (S.D.N.Y.2009). the court noted that "the simple disproportion between a plaintiff's recovery and the fee applied for is not a proper basis for a reduction of an otherwise reasonable fee." *Id.* at 478 (citing *Kassim,* 415 F.3d at 252). The court therefore declined to reduce plaintiff's award by more than the 15% it had already reduced plaintiff's attorney's requested hours because of the inefficient manner in which the law suit was prosecuted. *See id.* at 477–78. It is unclear how much the plaintiff in *Kahlil* initially sought, but he ultimately accepted an offer of $36,000, and the court awarded $93,172.75 in fees and $2,612.15 in costs. *Id.* at 473. Because it is not clear how much the plaintiff initially sought, or why the plaintiff ultimately accepted the offer he did. *Kahlil* is not determinative. In *McDow,* the court concluded that though plaintiff's "claims were interrelated, non-frivolous and made in good faith." "it [wa]s difficult to conclude that plaintiff achieved anything close to what was sought." because some of the plaintiff's claims were denied at summary judgment and the jury returned a verdict in plaintiff's favor of $10,000 when the plaintiff had originally sought "between two and three million dollars." *McDow,* 657 F.Supp.2d at 469–70. The *McDow* court considered "defendant's steadfast refusal to make any offer of settlement." but nonetheless reduced the fee award by 12% for limited success. *Id.* at 470. This case differs from *McDow* primarily in that the jury award demonstrated beyond any doubt that the plaintiff's case had merit, while the facts of this case do not make that determination as clear.

Defendant relies primarily on *Baird v. Boies, Schiller & Flexner LLP.* 219 F.Supp.2d 510 (S.D.N.Y.2002). (Def.'s Feb 5 Letter 4–5.) In *Baird,* plaintiffs initially calculated their damages at $1.25 million, but accepted a settlement of $37,500 (representing 3% of the initial claim). *Id.* at 512. Judge Chin rejected defendants' arguments that the number of hours and the hourly rate were excessive. *Id.* at 521–23. However, Judge Chin found that "plaintiffs accepted the offer of judgment because the realized as the case progressed, that they had little hope of success on the merit s," and reduced the fee award by 60%. *Id.* at 523–25.

In this case, Plaintiff's attorney states that the original demand was "made without the benefit of any discovery and [that] the lion's share of it was front pay," and that "as discovery continued. [P]laintiff became aware that even with success on the merit s, statutory damages would amount to *no more than* $15,000 and [D]efendant may have avoided liquidated damages altogether." (Pl.'s Feb. 18 Letter 3–4.) Plaintiff argues that, unlike in *Baird,* he never discovered that his claim had no merit at all, but discovered that the facts of his claim were weaker than he supposed. (*Id.* at 3.) More persuasive, though, is that, in this case, the facts that chiseled into Plaintiff's recovery only surfaced after discovery. (*Id.* at 4.) In contrast, in *Baird,* Judge Chin based his finding that plaintiffs had little or no chance of success largely on the deposition of one of the plaintiffs, and on other facts that the plaintiffs knew before the litigation began. *Baird,* 219 F.Supp.2d at 523–24.

■ The Court concludes that Plaintiff achieved more success than was present in *Barfield*, that the reasons for Plaintiff's limited recovery were mostly unknown to Plaintiff at the start of the litigation, and that Plaintiff's claim had more merit than the plaintiffs' claims in *Baird*. However, the Court also concludes that one of the facts that Plaintiff learned during discovery—that his healthcare was not provided by Defendant—could have been discovered more efficiently than through litigation, and that the fact Plaintiff could not have known—that Plaintiff's replacement was terminated due to a reduction in workforce—significantly affects the merits of Plaintiff's claim. Finally, the Court notes that although Plaintiff achieved his primary aim in a formalistic sense (he received money), he did not achieve it in a substantive sense (he did not receive much), that he achieved no injunctive or other non-monetary relief, and that the merits of this case were, in all likelihood, weaker than the merits in *McDow*. The Court therefore concludes that a reduction of 25% is warranted due to limited success.

Therefore, it is

ORDERED that Plaintiff is awarded $12,996.86 in attorneys' fees and $541.60 in costs, for a total award of $13,538.46.

SO ORDERED.